[No. 1409.]

THOMAS H. DEEGAN, AN INFANT, BY HENRY NELIGH, HIS GUARDIAN, PLAINTIFF AND RESPONDENT, v. THOMAS DEEGAN, JOHN TASSELL, DENNIS KEHOE, J. B. DAZET, W. H. COFFEY AND J. C. DUNLOP, DEFENDANTS AND APPELLANTS.

1—JURISDICTION OF DISTRICT COURT IN GUARDIANSHIP MATTERS PRESUMED.—In guardianship matters where the judgment of the district court is collaterally attacked, the jurisdiction of the court

Points decided.

is conclusively presumed, and evidence to the contrary is not admissible.

2—SERVICE OF CITATION—VOLUNTARY APPEARANCE.—The same as in case of a summons, service of a citation is to bring the party into court. If he voluntarily appears without it, such service is unnecessary.

3—ATTORNEY APPEARING, AUTHORITY PRESUMED.—Upon collateral attack on a judgment removing a guardian, the authority of an attorney to appear for the guardian is presumed, and the contrary cannot be shown.

4—POWER OF COURT TO REVOKE LETTERS OF GUARDIANSHIP.—Gen. Stats., sec. 583, provides that all laws relative to the accounts of administrators shall govern in regard to the accounts of guardians, as far as applicable. Section 2897 provides that, if an administrator fails to render an exhibit after being cited, an attachment may issue against him, or his letters may be revoked, in the discretion of the court. *Held*, that after a guardian had been duly cited to account, the court had jurisdiction to remove him for failure to do so, without further notice.

5—GUARDIANSHIP MATTERS—JUDGMENT OF COURTS IN—HOW ONLY TO BE RESISTED.—The judgment of the district court on matters concerning persons or estates of minors cannot be successfully resisted until overruled or modified by some proceeding impeaching it.

6—SAME—CONCLUSIVE AS TO WHOM.—Such judgments are conclusive not only against the guardian himself, but also against the sureties on his guardianship bond; whatever binds and concludes the guardian, equally binds and concludes his sureties.

7—PARTIES—NON-JOINDER OF PLAINTIFFS, HOW PROPERLY PLEADED. An objection of non-joinder of parties plaintiff cannot be taken by demurrer unless the complaint affirmatively shows that the party for whose non-joinder the demurrer is interposed was *living* when the suit was commenced. If this fact does not appear on the face of the complaint, the objection must be taken by answer.

8—SAME—ANSWER MUST SHOW PARTY LIVING.—An allegation in an answer of the non-joinder of proper parties, plaintiff is defective when it does not show that the omitted party or parties *were living* at the date of the filing of the complaint.

9—GUARDIAN'S BOND—TECHNICAL DEFECTS IN TO BE IGNORED.— There is wisdom in the rule, and it is of the highest importance, that a guardian's bond, though inartistically drawn or slightly defective, is to be held sufficient to bind the obligors. The law regards not the form but the substance of such an obligation.

10—SAME—JOINT, INSTEAD OF SEVERAL, AS TO OBLIGEES.—Where a guardian of several minors gives but one bond, the sureties cannot escape liability in an action on the bond, on the ground that it is not such a bond as the law requires, in that it is joint instead of several as to the obligees, nor on the ground that the action is brought by only one of the obligees.

11—DEFECTS OF FORM WAIVED BY GENERAL DEMURRER.—Where a complaint contains an allegation of the breach of a bond on which the action is brought, although defectively stated, an objection thereto is not raised by a general demurrer.

12—CONVERSION OF FUNDS OF WARD BY GUARDIAN—BREACH OF CON-
DITION OF BOND—LIABILITY OF BONDSMEN.—If a guardian con-
verts the funds of his ward to his own use, there is a breach of
his duty as guardian, and consequently a breach of the condition
of his bond, for which the sureties are liable.

APPEAL from judgment and order overruling motion for
new trial from the District Court, Storey county; *Richard
Rising*, District Judge.

The facts are fully stated in the opinion.

*W. E. F. Deal*, for Appellants:

The bond was joint and several as to the obligors (the
principal and sureties), but *joint* as to the obligees (the three
minors).

This action was brought by *one* only of the obligees; he,
alone, recovered judgment, and the sureties appeal.

The complaint fails to state a cause of action.

The law of this state on the subject of guardians is
contained in sections 548 to 598, Gen. Stats. Section 548
provides for the appointment of guardians of minors, who
have no guardian legally appointed by will; and section 558
relates to testamentary guardians. This latter section pro-
vides that the father of a minor may, by his last will,
appoint a guardian of such child, and that "every testa-
mentary guardian shall give bond and qualify, and shall
have the same powers and perform the same duties with
regard to the person or estate of such minor, as guardians
appointed by the probate court, except as far as the said
powers and duties may have been legally modified, enlarged
and changed by the will by which said guardian was
appointed."

We must, therefore, turn to section 555 of the General
Statutes, which makes provision for the giving of bonds by
guardians of minors. This section provides that the bond
shall be conditioned that the guardian shall faithfully exe-
cute the duties of his trust according to law, and that certain
conditions shall be deemed to form a part of such bond
without being expressed therein. One of these conditions is
that the guardian shall render an account within three
months after his appointment, and at such other times as the
court shall direct; another is that at the expiration of his

trust he shall settle his accounts with the probate judge and with the ward, if he be of full age, or his legal representative, and shall pay over and deliver all the estate remaining in his hands, or due from him on such settlement, to the person or persons, who shall be lawfully entitled thereto. It is alleged in the complaint that after executing the bond, in suit, said Thomas Deegan duly qualified as such guardian and continued to act as such until his letters of guardianship were revoked, and "that the final account of Thomas Deegan, as former guardian of plaintiff, has been settled in the above court and $574 found to be due thereon." There is no allegation that this sum was found to be due to *plaintiff*; it may have been found to be due to the former guardian from aught that appears from the complaint. It is true that an allegation follows that the former guardian received, as such, $1,286 40 of moneys belonging to plaintiff and unlawfully converted $574 10 thereof to his own use; but this allegation cannot aid the pleader, as it is not alleged that the court having jurisdiction of the guardian found that he converted this sum to his own use, or that it is the same matter which was settled by the court on the hearing of the final account.

Our statute on the subject of guardians and wards is in the particulars herein referred to almost identical in language with the provisions of the code of civil procedure of California upon the same subject. Section 548 of our statute corresponds with section 1747 of the code of civil procedure of California. Section 558 corresponds with section 1758 of the code of California. Section 555 corresponds with section 1754 of California code. The decisions of the supreme court of California on this subject are, therefore, directly in point.

*Graff* v. *Mesmer*, 52 Cal. 636, was an action against sureties upon a guardian's bond. It appears that the guardian had filed his account, but that it was never settled or allowed by the probate court. It is good authority in this case, as also are *Allen* v. *Tiffany*, 53 Cal. 16; *Chaquette* v. *Ortet*, 60 Cal. 599; *Weihe* v. *Stathan*, 67 Cal. 84. Clearly under these authorities the allegation of conversion by the guardian cannot aid the plaintiff in the absence of a further allegation that the court, in the guardianship proceedings, found such conversion to have taken place; and, furthermore, would it be against all rules of pleading to presume, in aid of the

complaint, that when the plaintiff alleged that the court found a certain sum to be due on an account, that it found such to be due to one party or the other, without any averment as to which of the parties it was? Numerous authorities from other states might be cited to sustain the proposition, which is well established, that the liability of the sureties on a guardian's bond does not attach or approve until after the account of the guardian has been settled in the probate court, and the amount due from the guardian fixed and determined by decree of that court.

The complaint fails to state a cause of action in another important particular.

There is no allegation anywhere therein that demand for payment has been made either upon the guardian or the sureties, nor is there any allegation of non-payment. (*Chaquette* v. *Ortet*, 60 Cal. 599.)

The complaint is, therefore, fatally defective in failing to show that neither the former guardian nor any of the sureties defendant in this action have paid the amount alleged to have been due and converted by the guardian. The liability of the sureties rests strictly upon their bond. The condition of their bond is that Thomas Deegan shall faithfully execute the duties of his trust. One of these duties is to pay over and deliver all the moneys in his hands, or due from him on the settlement of his accounts, to the person entitled thereto. It does not appear that he has not done so, and no breach of the conditions of the bond is, therefore, shown.

There is a defect of parties plaintiff.

It is elementary law that a surety has a right to stand on the precise terms of his contract, and that he can be held to no other or different contract. (*People* v. *Buster*, 11 Cal. 220; *Pierce* v. *Whiting*, 63 Cal. 543.)

In the case at bar the bond was conditioned that the principal would faithfully execute the duties of his trust, as guardian of three minors, who are named. Undoubtedly where one and the same person is appointed guardian for a number of minors he should give bond to each of his wards. The bond to each of them may be contained in the same instrument, but it should, at least, run jointly and severally to the wards; and the condition should be expressed that it is given as security for the faithful discharge of the duties of

his trust as guardian of each of the minors. No such bond was given by Thomas Deegan or his sureties. This appeal is not taken by Thomas Deegan, nor is the question of his liability involved here in any way. We have simply to deal with the rights and obligations of the sureties. They alone appeal from the judgment against them in this action brought by one only of the three joint obligees named in the bond..

The guardian is liable to each of his wards, separately, for the share of the estate of each coming into his hands without any bond whatsoever, but the liability of his sureties is fixed by their bond, and, according to its tenor, they made themselves liable only to the minors jointly, in case of the violation of duty by the guardian towards all of them.

It is not likely that a person who is appointed guardian of several minors will convert the funds of one of them and not those of the others. It is more than likely that he would mingle the funds of his wards, presumably invest them together, and probably keep a joint account with them. It would, therefore, be a matter of great difficulty to ascertain and determine which particular minor's funds the guardian had converted. The sureties on a bond, given to the minors jointly, ought not, therefore, to be subjected to separate actions by each of them.

The bond runs to the minors jointly, and the sureties have a right to stand upon the precise terms of their contracts, and insist that they shall be held to no other or different liability than that which is therein expressly and unequivocally provided for. The case of *McGilvery* v. *Moorehead,* 3 Cal. 267, is directly in point. There plaintiff and another made a contract with defendants to purchase flour. Defendants delivered a portion of the flour to one of the purchasers, and plaintiff sued for damages for a failure to deliver the balance to him. Defendants contended that the contract was joint and that plaintiff could not sue alone. Held, that if plaintiff relied upon the contract he could not sue without joining his co-contractor. To the same effect is: *Mayo* v. *Stansbury,* 3 Cal. 465; *Koutz* v. *Vanclief,* 55 Cal. 345.

.. Thomas Deegan has never been legally removed as guardian. His trust has not expired. Henry Neligh has never been legally appointed guardian, and the conditions of the bond have not been broken.

The citation was returned to the court with an admission of service by Mr. F. M. Huffaker, attorney for the guardian. No proof of service of the citation upon the guardian personally was ever made, and no other service appears than that shown by the admission of the attorney.

Section 583 of the General Statutes provides that all the laws relative to the accounts of executors and administrators shall govern in regard to the accounts of a guardian, so far as they can be made applicable. Section 2958 provides that a citation must be delivered to the person therein named; in other words, that there must be personal service. The authority of Mr. Huffaker, as attorney for the guardian, did not go to the extent of authorizing them to accept service of a citation, and the service upon him was void. The subsequent statement of the guardian to Mr. Huffaker, that he was satisfied with what he had done, could not operate retroactively to make that legal which was, at the time, void, at least as against these sureties.

If it appears that Mr. Deegan had left the state, the citation should have been served upon him by publication. (*Ashurst* v. *Fountain*, 67 Cal. 18; *Spencer* v. *Houghton*, 68 Cal. 82.)

No petition was ever filed in the Deegan guardianship matter for the removal of the guardian, and the only acceptation of service, even by Mr. Huffaker, was of a citation requiring the guardian to file an account. Without any petition, without any service upon the guardian or his attorney, without any foundation whatever, without any opportunity to the guardian to be heard, the court found that he had embezzled the estate of his wards and converted the same to his own use, and removed him. Its action, in this regard, was wholly unauthorized, without jurisdiction and void. It ought not to bind Thomas Deegan, and certainly could not bind his sureties.

It is, true that Thomas Deegan subsequently filed an account, and an amount was found due thereon to the plaintiff; but when the court did settle this account and Thomas Deegan was before it in person it did not remove him. We contend, therefore, that Deegan's trust as guardian has never expired, and that the condition upon which he was to pay over any money in his hands to the person entitled thereto has never arisen.

A guardian cannot pay over the estate in his hands to his ward during his minority. The guardian's trust terminates either when the ward attains his majority, or if he dies before that time, or if the guardian resigns his trust or is removed on proper proceedings. If the ward attains his majority the guardian must settle with him; if the ward dies during minority the guardian must settle with his administrator; if the guardian resigns or is legally removed, he must settle with his successor. In this case the ward (the plaintiff) is still a minor, the guardian has not resigned and has not been legally removed. Consequently there is no person who is lawfully entitled to receive the moneys found to be due to plaintiff by the court on settling the guardian's account.

Thomas Deegan's trust has not expired, and the implied condition of the bond, as expressed in section 555, Gen. Stats., has not been broken.

*C. E. Mack*, for Respondent:

The defendants moved for a new trial upon two grounds, namely: (1) Insufficiency of the evidence to justify the decision and that it is against law. (2) Errors in law occurring at the trial and excepted to by defendants. Said motion for a new trial was overruled and defendants appealed.

It will be seen upon examination that the evidence justifies the decision and that there are no errors in law occuring during the trial; and should the court find that there were errors in law occurring at the trial they were not to the prejudice of the defendants.

The statement on motion for a new trial does not specify the particulars wherein the evidence is insufficient to support the judgment, wherein it is contrary to the evidence, and fails to specify the particular errors in law occurring at the trial and excepted to by the defendants, and should be disregarded as provided by section 3219, Compiled Laws.

Counsel for appellants maintains that the case of *Graff* v. *Mesmer*, 52 Cal. 636, is in point in this case. We think this is illogical and unreasonable. The facts in that case are totally unlike the facts in this case. In that case the final account of the guardian had not been settled by the court. In this case the evidence is that Deegan had been removed

as guardian and Neligh appointed to succeed him. The final account of Deegan as guardian was settled before this action was commenced, and that Deegan as guardian had embezzled and unlawfully converted $574 10 of plaintiff's money to his own use. All the other authorities cited by appellant on this point are, like the case of *Graff* v. *Mesmer*, not in point, as the facts in each are totally unlike the facts in this case. After the demurrer of defendants was over-ruled, and no exception was taken to such ruling, defendants answered to the complaint, raising issues of fact, and thereby waived their right to rely upon their demurrer upon issues of law. (Bliss on Code Pleading, sec. 417; *Tenant* v. *Pfister*, 45 Cal. 272; *Lonkey* v. *Wells*, 16 Nev. 275, and authorities cited.)

It is not necessary to allege or prove a demand. In a case of this kind the commencement of the action is a sufficient demand and the allegation in the complaint of the amount found due on the settlement of the account, and that the former guardian Deegan had unlawfully converted the same to his own use is a direct allegation of a breach of the bond and non-payment, and could not have been more clearly alleged than in this case. Conversion could not have been alleged or proven had the money been paid to plaintiff. A pleader is not required to use a set phrase and is only required to set out the facts constituting the cause of action in ordinary and concise language, which should be fairly and liberally construed. (Com. Laws, secs. 3061, 3092; *Rosendorf* v. *Mandel*, 18 Nev. 129; *White Pine Co. Bank* v. *Sadler*, 19 Nev. 98; *McManus* v. *Ophir Silver Mg. Co.*, 4 Nev. 15.)

Counsel for appellant, in claiming that the complaint is defective in not using the negative words of " no part of which has been paid," evidently seeks to establish a new rule in pleading a conversion. He taught the writer while a law student in his office that it was quite unnecessary to plead payment where unlawful conversion was to be set out in a complaint, or in other words, there could be no lawful conversion where payment had been made.

Counsel for appellant contends that there is a misjoinder of parties from the fact that the bond given by the former guardian is to the three minor children of Michael Deegan, deceased, and this suit is brought in the name of the guard-

ian of Thomas Deegan, a minor, without joining the other two children. The statute directs that the "action shall be prosecuted in the name of the real party in interest." (Com. Laws, sec. 3031.)

The supreme court of California has adopted the rule that the action shall be brought in the name of the real party in interest and the obligees are not compelled to join in an action. (*Summers* v. *Farrish*, 10 Cal. 347; *Lally* v. *Wise*, 28 Cal. 540; *Brownee* v. *Davis*, 15 Cal. 9.)

Where the defendant has caused a severance of joint obligees by paying to one or more their proportion, then the other obligees can sue separately. (*Buckner* v. *Baird*, 32 La. 226.)

The defendants having settled and paid John J. Deegan his proportion or interest, and defendants themselves severed the joint interest of the obligees.

The interest of the minors is not united, and the attempt of counsel to so state is an attempt to contradict the facts in the case. Neither of the children have nor ever had any interest in the money due plaintiff, and the fraudulent attempt of the former guardian and the sureties to give the bond in one instrument, so as to destroy and perplex the remedy of the plaintiff, is an attempt to set up their own fraud as a defense to plaintiff's complaint.

Thomas Deegan, the former guardian, testified that he was removed, and that after that he ceased to act as guardian. This shows conclusively that he had authorized F. M. Huffaker, Esq., to accept service of citation as testified to by said Huffaker.

Section 585, Com. Laws, provides that a guardian may be removed after notice, but makes no provision for the service of the same upon a non-resident and absconding guardian, and plaintiff should not be requirred to do an impossible thing or one that is not required by the statute. Counsel urges that under section 2958, Com. Laws, the former guardian must be personally served with notice, although he had left the state. If sections 2957 and 2958 are the law in this respect then the notice on a non-resident and absconding guardian must be served as a summons is served when issued by the district court. If this be the law, then section 3047, Com. Laws, provides that voluntary appearance shall be

equivalent to personal service of summons and gives the court jurisdiction.

Where it appears that a guardian has removed from the jurisdiction of the court and taken the property of his ward with him, his removal will be ordered without notice. (*Cooke* v. *Beale*, 11 Ind. (N. Car.) 36; *State* v. *Engelke*, 6 Mo. App. 356; *Succession of Bookter*, 18 La. Ann. 157.)

The fact that the bond to the three children was in one instrument does not invalidate it nor compel the minors to join in one action to enforce its breach. (*Ordinary* v. *Heishon*, 42 N. J. Law, 15; *Court of Probate* v. *William Sprague*, 3 R. I. 205; *Hook* v. *Evans*, 68 Iowa, 54; *McBeth* v. *VanSickle*, 6 Nev. 134.) And if the court should believe that the bond should not have been in one instrument, this slight defect does not invalidate it. (*State* v. *Rhodes*, 6 Nev. 371.)

In settling the final account of Deegan, the former guardian, Deegan not only appeared by attorney, but in person, and under oath rendered a final account, in which he testifies that he had been removed and was no longer guardian. The sureties also appeared by their present attorney, who contested said final account on behalf of said sureties, and on the final ruling of the court took exception thereto.

A guardian's final account, settlement and discharge by the court are *res adjudicata* of all matters therein, and cannot be collaterally attacked in a suit upon the bond and can only be set aside by direct proceedings therefor. (*State* v. *Slaughter*, 80 Ind. 597; *Holland* v. *State*, 48 Ind. 391; *Garlon* v. *Boots*, 73 Mo. 275; *Lynch* v. *Rotan*, 39 Ill. 14; *Broderick* v. *Bordriff*, 56 Cal. 563; *Canby* v. *Hanmore*, 76 Ind. 125.)

In an action upon a guardian's bond for the recovery of the amount found due the wards, upon a final settlement of the guardian's accounts in the probate court, the sureties are concluded by the settlement, and will not be heard in the absence of fraud and collusion, to question its correctness or demand a rehearing of the accounts. (*Brandon* v. *Mercer*, 44 Ohio, 339.) And they are estopped from denying the truth of the report. (*Joseph Ream, Guardian,* v. *Edward Lynch*, 7 Ill. App. 161; *Garrett* v. *Malone*, 54 Ala. 19; *Corbin* v. *Westcott*, 2 Demarest, 559; *Badger* v. *Daniel*, 79 N. C. 386.)

By the Court, MURPHY, C. J.:

By his last will and testament, M. W. Deegan, deceased, nominated and appointed Thomas Deegan to be the guardian of the person and estates of his minor children, to wit, John J. Deegan, Thomas Deegan and Michael Deegan. On or about the 23d day of July, 1888, the said Thomas Deegan qualified as such guardian, by the filing of a bond in the penal sum of $5,000 for the faithful discharge of his duties as such guardian, and entered upon the discharge of his duties. This action is brought upon the bond for a failure of the guardian to discharge the duties of his trust. The defendants first contend that the court had no jurisdiction to remove the former guardian, and none to appoint the present guardian. On June 27, 1893, the plaintiff filed a petition in the district court stating that the guardian had never filed any account of his guardianship, and asking that he be compelled to do so. An order was thereupon made that a citation issue requiring the guardian to file such an account on or before July 15, 1893, or then show cause why he should not do so. On that day, F. M. Huffaker, Esq., an attorney at law, appeared for the guardian, and asked for further time in which to file the account. The time was accordingly extended to July 22d, the court stating in the order extending the time that, if the accounts were not then filed, the letters of guardianship would be revoked. July 25th, Mr. Huffaker again appeared; but, no account being forthcoming, an order was made revoking the letters, and removing the guardian. On the same day the present guardian was appointed.

The objection in this case to the orders revoking the letters of the former guardian, and appointing the present one, is a collateral attack upon the judgment of the court in the guardianship matter. (Van Fleet, Coll. Attack, secs. 2, 3.) In such a case the jurisdiction of the district court is conclusively presumed, and evidence to the contrary is not admissible. (Black, Judgm., sec. 271; Van Fleet, Coll. Attack, sec. 841.) Upon another ground, also, the jurisdiction is sufficiently shown. The same as in case of a summons, service of a citation is only necessary to bring the party into court. If he voluntarily appears without it, such service is

unnecessary. Here it appears from the record that the guardian did appear by attorney. To be sure, it was sought to be shown that the attorney had no authority to appear for him, but, upon collateral attack, such authority is presumed, and the contrary cannot be shown. (*Carpentier* v. *City of Oakland*, 30 Cal. 446; Weeks, Attys. at Law. secs. 196, 212.) It is, however, argued that the proceeding in the guardianship matter was simply to compel the guardian to account, and that in that proceeding the court had no jurisdiction, without further notice, to remove the guardian. Section 583, Gen. Stats., provides that all the laws relative to the accounts of executors and administrators shall govern in regard to the accounts of guardians, so far as the same can be made applicable.

Section 2897 directs that if any executor or administrator neglects or refuses to appear and render an exhibit, after having been duly cited, an attachment may be issued against him, or his letters may be revoked, in the discretion of the court. That was the situation here. After having been, presumptively, duly cited to render an account, and upon the hearing of the matter by attorney, he still neglected or refused to do so. This authorized the court to remove him. (*Deck's Estate* v. *Gherke*, 6 Cal. 668.) Section 6 of article VI. of the constitution vests in the district court jurisdiction in all cases relating to the persons and estates of minors; and its judgment cannot be successfully resisted until reversed or modified by some proceeding impeaching it. It is conclusive, not only against the guardian himself, but also against the sureties upon his official bond. Whatever binds and concludes the guardian equally binds and concludes his sureties. (*Brodrib* v. *Brodrib*, 56 Cal. 563; *Holland* v. *State*, 48 Ind. 391; *Garton* v. *Botts*, 73 Mo. 276; *Candy* v. *Hanmore*, 76 Ind. 125; *Lynch* v. *Rotan*, 39 Ill. 20; *State* v. *Slauter*, 80 Ind. 597.)

The appellants contend that, the bond given by Thomas Deegan as guardian of the persons and estates of the minors being joint and several as to the obligors, but joint as to the obligees, this plaintiff cannot maintain this action without joining his co-obligees with him; and they interposed a demurrer to the complaint on the ground of defect of parties plaintiff, which was overruled. An objection of non-joinder of parties plaintiff cannot be taken by demurrer unless the

complaint shows that the party for whose non-joinder the demurrer is interposed was living when the suit was commenced. And it is held that it is not enough that the complaint is silent on the subject; the fact must affirmatively appear. (Estee, Pl. & Pr., sec. 3102; Bliss, Code Pl., sec. 411.) If it does not appear upon the face of the complaint, the objection must be taken by answer. This the defendants attempted to do by an allegation in their answer that they were not liable to the plaintiff, but, if any liability existed, it was to the obligees named in the bond jointly, and not severally to plaintiff. This allegation is defective, in that it does not show that the omitted party or parties were living at the date of filing the complaint. (*Wilson* v. *State,* 6 Blackf. 212; *Stockwell* v. *Wager,* 30 How. Pr. 273; *Levi* v. *Haverstick,* 51 Ind. 236; *National Distilling Co.* v. *Cream City Importing Co.* (Wis.) 56 N. W. 866; *Palmer* v. *Field* (Sup.) 27 N. Y. Supp. 737; *State* v. *Goodnight,* 70 Tex. 688; *Furbish* v. *Robertson,* 67 Me. 38.)

Pleas in abatement have always been regarded with disfavor, by reason of the fact that they are dilatory in their nature, and seek to defeat the action upon technical grounds. The rule, therefore, in relation to the degree of certainty required, both as to form and substance of such pleas, requires fullness and particularity in the statement, leaving nothing to be supplied by intendment or construction; and the pleadings should show that it was necessary, in order to protect the rights and interest of the pleader, that the omitted party should be brought into court.

The appellants argue that the bond given in this case is not such a bond as is required to be given by law, and is for that reason null and void. There is no allegation in the answer, nor is there any statement in the points and authorities submitted to us by the counsel, pointing out wherein this bond is defective, except, as we can infer from his argument, that it is so by reason of the fact that it is joint in so far as the obligees are concerned. It has been held in a number of well-considered cases that a guardian's bond, though inartificially drawn or slightly defective, will be held sufficient to bind the obligors; and we cannot but think that there is manifest wisdom in the rule that the law will regard in transactions like the present, not the form, but the sub-

stance, of the instrument; nor does it seem to us that such a rule is ever, in any of its numerous applications, of more worth than when it is employed as a safeguard to persons who are unfortunate, and must of necessity be represented by agents appointed by the court and designated guardians. It must strike any one as preposterous that the bond given by a guardian can be defeated by a slight inaccuracy—by the addition or omission of a word or sentence.  The present case will afford a fair illustration of the practical operation of such a pernicious principle.  This guardian had the bond prepared by an attorney of his own choosing.  The principal and his bondsmen signed it knowing that they were obligating themselves—the principal that he would faithfully perform all the duties of his trust, in accordance with law and the orders of the court; and the bondsmen binding themselves that they would be responsible for any defalcation or neglect of duty on the part of their principal.  This instrument was presented to the judge for his approval.  It was approved by the judge, and filed in the office of the clerk; and now, after the lapse of many years, when it becomes necessary to sue the bondsmen, the property of the minors having been misappropriated by the guardian, the bondsmen endeavor to avoid their obligation by raising the technical objection that one of the obligees cannot maintain the action without joining all others named in the bond with him.  As the said bond was given subject to conditions prescribed by the statute, which conditions have not been fulfilled, in our judgment, law and public policy demand that such defenses should not prevail in this character of cases.

The case of *Ordinary* v. *Heishon*, reported in 42 N. J. Law, 17, was an action upon a guardian's bond.  The defense was that the bond did not conform to the statute, by reason of the fact that but one bond was given for the guardianship of two minors, and was defective in other particulars.  It was admitted that the statute of the state required a separate bond with respect to the estate of each minor.  The court said:  "The act of tendering such a bond as this, as the security called for by the statute, was an act of great carelessness on the part of the guardian and his sureties, and the acceptance of such instrument by the surrogate or the court

was conduct still more censurable; but it would seem to be irrational in the extreme to conclude that, by reason of such improprieties, these sureties are to be absolved from all responsibility, and these innocent minors be left without redress. We have not adopted in this state the doctrine that, because a bond of this class does not conform to the statutory definition, it becomes, for that reason alone, unenforceable. In such a condition of things, the strong leaning of the courts has been to hold such instruments valid, to the full extent of their terms, so far as they embody the statutory policy, as voluntary obligations."

The case of *Pursley* v. *Hayes*, 22 Iowa, 28, was a proceeding to set aside a guardian's sale. One of the objections raised was that the bond was a joint bond, and hence void. In passing on this point, the court said: "Next is the objection that the guardian was appointed for the wards jointly, and the bonds are for their security in the same manner, * * * and certainly nothing has been more common in our practice than to appoint one guardian for all minors thus interested, and no rule of the statute can be found forbidding it." The case of *Hooks* v. *Evans*, 68 Iowa, 54, was an action by one ward against her guardian and sureties. On the trial of the case in the *nisi prius* court, the sureties were released, and judgment entered against the guardian. The plaintiff appealed. In reversing the judgment, the appellate court said: "One question remains to be determined, and that is as to the amount for which these sureties are liable in this case. The judgment against the guardian was for $736.12. The penalty of the bond is $600. The judgment against the sureties might be for the amount of the penalty of the bond, but for the fact, which remains to be stated, that Evans was appointed guardian, not only for the plaintiff, but for three others, and the bond in question was given for their benefit, and was the only one given for the four. It is manifest that the aggregate liability of the sureties to the four wards could not exceed $600. The other three wards are not made parties, and without them no judgment can be rendered by which their rights can be impaired. It follows that the court below should have rendered judgment against the sureties for $150, and only that."

Although the bond in this case is not in strict conformity

to the statute, yet the fact that it was given for the benefit of more than one minor does not vitiate it. The practice in this respect appears to be general and uniform in all courts authorized to take such bonds. The omission of the word " severally " does not weaken the bond, release the sureties, nor, in our opinion, deprive the individual ward from maintaining an action either against the guardian or his sureties. The nature of the guardian's duties is several, and would require a several inventory, a several accounting, and payment over to the wards, as they severally arrive at full age.

The appellants contend that there is no allegation in the complaint that the decree in the guardianship matter found the sum for which the judgment is given to be due the plaintiff; but in this counsel is mistaken, for the complaint distinctly charges " that the final account of Thomas Deegan as former guardian of plaintiff has been settled in the above court, and $574 10 found to be due plaintiff thereon."

Counsel also contends that there is no allegation of a breach of the conditions of the bond; that there is no allegation that the money has not been paid to the plaintiff; and that, consequently, the complaint does not state facts sufficient to constitute a cause of action. To this contention, however, we think there are two sufficient answers: First— The complaint does allege " that, after qualifying as such guardian, the said defendant Thomas Deegan received as said guardian, of the person and estate of plaintiff, the sum of $1,286 40 of the moneys belonging to plaintiff, and has unlawfully converted the sum of $574 10 thereof to his own use." The demurrer is general so far as this point is concerned, and the defect now relied upon is not specially pointed out as such. There can be no question that the allegation just quoted was intended as charge of a breach of the conditions of the bond. Admitting that it is not sufficient as such, it is still more a defect of form than of substance, and is quite different from a complaint that contains no allegation of a breach. As such it was waived by the general form of the demurrer. (*Grant* v. *Sheerin*, 84 Cal. 197; *Bliss* v. *Sneath*, 36 Pac. 1029.) Second—The office of guardian is one of trust and obligation. He is bound to act for the best interest of his ward, and not for his own; and, whenever he seeks to gain an advantage at the expense of his ward, such

act is fraudulent. It was the duty of the guardian to keep the money of his ward separate and intact from his own funds, and invest the same for the best interest of his ward. He had no right to use it in his own private business, nor for his own purposes; and, if he did so, such use was a breach of his duty. (1 Perry, Trusts, sec. 275.) The bond was that he should faithfully execute the duties of his trust according to law; and if he converted the money to his own use, as charged in the complaint, there was clearly a breach of his duty as such guardian, and consequently a breach of the condition of the bond, for which his sureties are responsible. (*State* v. *Roberts*, 21 Ark. 263; *Irwin* v. *Backus*, 25 Cal. 221.)

It follows that Thomas Deegan was legally removed as guardian and by such removal his trust expired, and the conditions of his bond were broken. Henry Neligh, having been selected by the minor, and at his request appointed by the court, is the legal guardian.

The judgment and order appealed from are affirmed, and it is so ordered.