[Civ. No. 28374. Second Dist., Div. Three. Apr. 18, 1966.]

LEILA L. SLACK, Plaintiff and Respondent, v. SHELDON SLACK, Defendant and Appellant.

Lewis Graham for Defendant and Appellant.

Fain & Lavine and Richard A. Lavine for Plaintiff and Respondent.

FRAMPTON, J. pro tem.*—Appeal from a summary judgment. Plaintiff and respondent Leila L. Slack (hereinafter referred to as the plaintiff) and defendant and appellant Sheldon Slack (hereinafter referred to as the appellant) were married in the City of Chicago, State of Illinois, on August 18, 1949. They lived together in Cook County, State of Illinois, as husband and wife until the date of their separation on December 8, 1957. There were two children born, the issue of this marriage. In January 1958, the plaintiff filed an action for divorce against appellant in the Superior Court of Cook County in which she charged that the appellant had been guilty of conduct amounting to extreme and repeated cruelty towards her. The appellant was personally served with summons and complaint in this action on January 13, 1958, in the City of Santa Monica, California. The appellant's reason for being in the City of Santa Monica on this occasion appears, in this declaration in opposition to plaintiff's motion for summary judgment, to be that he had left his domicile in Tucson, Arizona, and had come to the City of Santa Monica temporarily on a two weeks' vacation to visit his father who was a resident of the latter city. He did nothing at this time by way of an appearance in the Illinois action.

The Illinois action went to trial as a default and judgment was rendered therein on May 5, 1958, granting the plaintiff a divorce. The judgment, amongst other things, ordered the appellant to pay to the plaintiff for the support of the two minor children of the parties, the sum of $50 per week. As of March 11, 1963, the appellant had paid nothing pursuant to the Illinois judgment, but had paid for the support of his minor children the sum of $3,094.15 pursuant to an order made in an action brought in Los Angeles County under the Uniform Reciprocal Enforcement of Support Act. (Code Civ. Proc., § 1650, et seq.) Sometime in late February or early March of 1963, the plaintiff commenced a proceeding in the Illinois action to reduce the arrearage on the child support payments to a money judgment. The appellant at this time according to his declaration, was a domiciliary of Los Angeles County, and was personally served in said county with notice of these proceedings. After a hearing in this proceeding the Illinois court found that the appellant was willfully and contemptuously in arrears upon the judgment rendered on May 5, 1958, for child support in the sum of $12,505.85, and entered judgment for

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

the plaintiff and against the appellant in this amount. This figure represented the difference between the arrearage on the Illinois judgment in the sum of $15,600 and the amount paid under the California support action. The court also entered judgment against the appellant and in favor of plaintiff's attorneys in the sum of $1,500.

It further appears in the appellant's declaration that after he was served with notice of the 1963 proceedings in the Illinois action, he took the papers to his attorney in Beverly Hills and sought legal advice in connection with the Illinois proceedings. He states that his attorney in California advised him to do nothing other than to have an Illinois attorney present at the hearing to observe what the Illinois court did in the action and to notify either the appellant or his California attorney of the results. He states further that he thereafter contacted his mother by telephone in Chicago, Illinois, and that he informed her of the advice given him by his attorney in California and that his mother suggested that he use her attorney, Mr. Morris C. Shaps, 134 LaSalle Street, Chicago, Illinois, to sit in on said proceedings. He states further that Shaps contacted him by telephone from Chicago and that he informed Shaps of the advice given appellant by his California attorney and that appellant did not otherwise authorize nor direct Shaps to make any type or kind of appearance in the Illinois action for or on his behalf. He states further, that Shaps forwarded many documents for him ''to sign indicating the necessity of urgency and expediency, certain ones of which I glanced over and could understand portions thereof, others of which I glanced over but could not understand, and others of which I signed without reading, all at said MORRIS C. SHAPS's direction.

''I never did, at any time, employ nor retain said MORRIS C. SHAPS for any reason other than that hereinbefore set out.''

The record discloses that Shaps made a special appearance in the Illinois action as attorney of record on behalf of the appellant, for the purpose of contesting the jurisdiction of the Illinois court over the person of appellant. In connection with this special appearance Shaps filed a motion ''1. To quash the service had upon the defendant. 2. To dismiss the above action.'' With the permission of the court, Shaps filed an ''AMENDED MOTION TO VACATE SUPPORT ORDER AND JUDGMENT.'' The amended motion sought to annul that portion of the decree entered on May 5, 1958, ordering child support pay-

ments and to set aside the judgment rendered on March 11, 1963, in the sum of $12,505.85. Both attacks upon the Illinois judgment were predicated upon the assertion that at the time of the service of process upon the appellant, he was not a resident of the State of Illinois, but on the contrary was a resident of the State of California, and while the Illinois court had jurisdiction to enter a decree dissolving the marriage it had no jurisdiction to render a judgment *in personam* against the appellant. It was urged that the Illinois action was not predicated upon any of the grounds set forth in chapter 110, section 17 of the Civil Practice Act of Illinois.[1]

Section 17 was amended in 1965 to add subdivision (e) thereto which extended its provisions to cover actions for divorce and separate maintenance.[2] The appellate court of Illinois has held that section 17 is procedural in its nature and therefore its provisions may be applied retrospectively to causes of action which arose prior to its effective date. (*Sunday* v. *Donovan,* 16 Ill.App.2d 116 [147 N.E.2d 401].)

In support of the motion made in the Illinois action, Shaps filed an affidavit signed by the appellant wherein the latter deposed as follows: ''Now comes Sheldon Slack, defendant

---

[1] ''(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

'' (a) The transaction of any business within this State;

'' (b) The commission of a tortious act within this State;

'' (c) The ownership, use, or possession of any real estate situated in this State;

'' (d) Contracting to insure any person, property or risk located within this State at the time of contracting.

'' (2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State as provided in this Act,[a] with the same force and effect as though summons had been personally served within this State.

'' (3) Only causes of action arising from acts enumerated herein may be asserted against a deefndant in an action in which jurisdiction over him is based upon this section.

'' (4) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law. 1933, June 23, Laws 1933, p. 784, art. 3, § 17; 1955, July 19, Laws 1955, p. 2238, § 1.

[a]Section 16 of this chapter.''

[2] ''(e) With respect to actions of divorce and separate maintenance, the maintenance in this State of a matrimonial domicile at the time the cause of action arose or the commission in this State of any act giving rise to the cause of action.''

herein, and in support of the motion to quash the summons herein and to dismiss the suit, and being duly sworn, states:

"1. That defendant is not subject to the jurisdiction of this Court and this cause of action is without the jurisdiction of this Court because defendant did not transact business in this state, commit any tortious act within this state, does not own any real estate in this state and did not contract to insure any person or property in this state, all within the purview of section 17 (1), (a), (b), (c) or (d) of the Civil Practice Act of Illinois.

"2. That at the time of service of summons upon the defendant in California, defendant was and still is a resident of the State of California and not of the State of Illinois." After hearing on the motion and the amended motion the Illinois court, on April 15, 1963, made and entered its order denying the motions.

On May 22, 1963, the plaintiff filed her action in the Superior Court of Los Angeles County to establish as a judgment in this state the provisions of the judgment for divorce rendered in the Illinois action as well as the subsequent judgment rendered therein establishing the amount of the arrearage on such decree and awarding attorneys' fees. The defendant was duly served with process in the California action and appeared and filed his answer to the complaint.

On August 5, 1963, the plaintiff filed a notice of motion for a summary judgment in the California action. In support of this motion there was filed the declaration of Edward D. Rosenberg, one of the attorneys who represented plaintiff in the Illinois action. Rosenberg's declaration identifies copies of exemplified copies of the motion to quash, the affidavit of appellant filed in support of such motion, the amended motion to vacate a portion of the Illinois decree relating to child support and to vacate the judgment in the sum of $12,505.85, the notices filed in connection with such motions, minute orders of the court including the final order denying such motions, the originals of which are all on file in the Illinois action. In further support of the motion for summary judgment, plaintiff filed the declaration of Harry M. Fain, one of her attorneys in the California action, who had taken the appellant's deposition in the latter action. Fain's declaration discloses that the appellant had been personally served in California with the summons and complaint in the Illinois action and that he understood the nature of those documents; that appellant had learned from his mother in Chicago that his wife had obtained

a decree of divorce on May 5, 1958, and in reliance upon this information he married his present wife, Janet. Fain's declaration further shows that appellant testified in his deposition that his mother had hired for him attorney Morris C. Shaps, 134 LaSalle Street, Chicago, Illinois. At the taking of appellant's deposition, when he was shown copies of the various documents, including his affidavit filed by Shaps in support of the motion to quash the summons and dismiss the Illinois action he testified: "All the papers he sent me I just signed." He testified further that: "Well, he sent me quite a few papers that I signed all at once and had to airmail special delivery back to him, and there was a big rush." Further on in his deposition he testified "I talked to Mr. Shaps three or four times before and after" the hearing. Fain's declaration further shows that at the taking of the deposition appellant gave the following answer to the following question: "Q: Didn't you tell me, didn't you represent to the Court in Cook County, and didn't you read that you, in your affidavit and motion, that you stated service was had upon defendant illegally, and that defendant was not at the time of service of the summons upon himself in the State of California on January 13, 1958, a resident of the State of Illinois? Don't you remember stating that?

"Yes, that I remember." Later in the deposition the following appears: "Q. Now, Mr. Slack, referring to the various proceedings that were had in Chicago, Illinois relative to the support, judgments, as reflected in exhibits 1 and 2 for identification, you were informe'd, were you not, some time after April 15, 1963, that your motions then to vacate the previous judgments for support were denied in Chicago, isn't that correct?

"Yes.

"Q. Have you authorized, or are you aware of any proceedings undertaken at this point to appeal from that, those proceedings?

"No.

"Q. Do you understand the question?

"A. Not fully.

"Q. Did you undertake or authorize any further proceedings in Chicago?

"A. No."

In opposition to the motion for summary judgment the appellant filed his declaration in which he claimed in substance that he left the City of Chicago on December 22, 1957, and went to Tucson, Arizona, where he intended to and did

establish his domicile. He lived in Tucson, Arizona, until July 4, 1958, when he moved to the City of Santa Monica, State of California, where he intended to and did establish his domicile. He states that in January 1958, while in the City of Santa Monica temporarily to visit his father, he was personally served with the summons and complaint in the Illinois action and did nothing about it. Later, in the early part of March 1963, in California he was again personally served with legal papers in the Illinois action. At this time he sought the advice of counsel in California who explained to him that his wife at this time was attempting to reduce the arrearage for child support in the Illinois action to a money judgment. He states further in this declaration that his California attorney advised him to do nothing in the Illinois action other than to have an Illinois attorney present and sitting in the courtroom for the purpose of observing what the court did and then to notify the appellant or his California attorney of the results. He states that he then contacted his mother by telephone in Chicago and informed her of the advice given him by his California attorney whereupon his mother suggested that he use her attorney, Morris C. Shaps, to sit in on said proceedings. That thereafter Shaps contacted him by telephone from Chicago at which time he conveyed to Shaps the advice given him by his California attorney, but did not otherwise authorize or direct Shaps to make any type or kind of an appearance for or on his behalf in the Illinois action. Appellant states further, in his declaration that Shaps thereafter forwarded many documents for him to sign indicating that there was a necessity of urgency; that appellant glanced over certain of these documents and could only understand portions of them, and others he signed without reading, all at Shaps' direction; that he never did at any time, employ or retain Shaps for any reason other than to observe and report the proceedings had in the Illinois action.

After a hearing the trial court granted the motion for summary judgment. The appellant asserts that the record before the court on the motion for summary judgment presented a triable issue of fact, that is, whether Shaps was authorized to make an appearance in the 1963 proceedings in the Illinois action for and  on behalf of the appellant.     If Shaps had the authority to make a special appearance on behalf of appellant in the Illinois action for the purpose of contesting the jurisdiction of that court over the person of the appellant, then the ruling of that court upon such a hearing, in the

absence of an appeal therefrom, became final and is res judicata as to such question and the appellant would be barred from again attacking it either directly or collaterally. (Rest., Judgments, § 9, p. 50 and § 20, subd. b., p. 95; *Payne* v. *Pullan*, 44 Cal.App. 728 [187 P. 127]; *American Law Book Co.* v. *Superior Court*, 164 Cal. 327 [128 P. 921]; *DeMatei* v. *Superior Court*, 74 Cal.App. 147 [239 P. 853]; *Moore* v. *Superior Court*, 203 Cal. 238, 245 [263 P. 1009]; *Maloney* v. *Massachusetts Bonding & Ins. Co.*, 20 Cal.2d 1, 5 [123 P.2d 449]; 1 Witkin Cal. Procedure (1954) Jurisdiction, § 156, p. 422; *Heuer* v. *Heuer*, 33 Cal.2d 268, 271 [201 P.2d 385].)

There is no suggestion in the record before us that Shaps' appearance in the Illinois action was obtained in any way by fraud or collusion in which the plaintiff participated.

■ If the only basis of jurisdiction of the person in the particular case is appearance, a purported appearance by an unauthorized attorney cannot confer such jurisdiction and the resulting judgment is void. (1 Witkin, Cal. Procedure (1954) Jurisdiction, § 69, p. 339.) On collateral attack, in a California action, upon a judgment of dismissal obtained in a Nevada action the Supreme Court has said: " 'In civil litigation, the attorney, as the client's agent, and in the absence of fraud, has authority to bind his client in all matters pertaining to the regular conduct of a case. . . . In the absence of such special instructions, the conduct and management of the action is entrusted to the attorney's judgment; he decides what should be contested, what points should be taken, and what should be abandoned. This authority is, however, subject to the qualification that an attorney ordinarily does not have implied authority to do an act which will effect the surrender or loss of a client's substantial rights, for the client determines "the objectives to be attended." ' " (6 Cal.Jur.2d, Attorneys at Law, § 156.) There is, however, a presumption that he has authority to compromise his client's action which he is prosecuting. (*Church* v. *Church*, 40 Cal.App.2d 701 [105 P.2d 643]; *Burns* v. *McCain*, 107 Cal.App. 291 [290 P. 623]; 66 A.L.R. 107, 126; 30 A.L.R.2d 944, 953; *State of Nevada* v. *California Min. Co.*, 15 Nev. 234; *Deegan* v. *Deegan*, 22 Nev. 185 [37 P. 360, 58 Am. St. Rep. 742].) Defendant Burke points out that there are authorities in California and Nevada which hold that on collateral attack the presumption of the attorney's authority is conclusive (*Westwood Temple* v. *Emanuel Center*, 98 Cal. App.2d 755 [221 P.2d 146]; *Parkside Realty Co.* v. *MacDonald*, 167 Cal. 342 [139 P. 805]; *May* v. *Rosen*, 91 Cal. App.2d 794 [205 P.2d 1118]; *Deegan* v. *Deegan, supra*, 22

Nev. 185 [37 P. 360, 58 Am. St. Rep. 742]), and it has been held that an attorney has authority to dismiss an action with prejudice (the modern name for retraxit, *Ghiringhelli* v. *Riboni*, 95 Cal.App.2d 503 [213 P.2d 17]; *Robinson* v. *Hiles*, 119 Cal.App.2d 666 [260 P.2d 194]) contrary to the rule at common law. (*Lamb* v. *Herndon*, 97 Cal.App. 193 [275 P. 503]; *Bogardus* v. *O'Dea*, 105 Cal.App. 189 [287 P. 149]; *Chase* v. *Van Camp Sea Food Co.*, 109 Cal.App. 38 [292 P. 179]; but see 6 Cal.Jur.2d, Attorneys at Law, § 164, *supra*.) While the above cited cases may appear to conflict with the rule that ordinarily an attorney has no authority to surrender his client's rights (see quotation *supra*, from 6 Cal.Jur.2d, Attorneys at Law, §§ 156, 164), they may be reconciled on the theory that there is a rebuttable presumption that he had such authority." (*Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.*, 45 Cal.2d 448, 460, 461 [289 P.2d 466].)

■ The appearance of Shaps in the Illinois action has resulted in the loss to appellant of his right to attack the *in personam* jurisdiction of that court over him. If Shaps' appearance was unauthorized then appellant should be given the opportunity to collaterally attack the judgment by showing, if he can, that he in fact made no appearance in the Illinois action.

■ Appellant, in his declaration in opposition to the motion for summary judgment, stated that he had not authorized nor did he direct Shaps to appear in his behalf in the Illinois action. This raised an issue of fact, *Anderson* v. *Joseph*, 146 Cal.App.2d 450, 454 [303 P.2d 1053], and it was therefore error to grant the motion for a summary judgment, *Simmons* v. *Civil Service Emp. Ins. Co.*, 57 Cal.2d 381 [19 Cal.Rptr. 662, 369 P.2d 262], and while the record before us, coupled with the rebuttable presumption, strongly indicates that Shaps had the authority to appear on behalf of appellant and contest the jurisdiction of the Illinois court, this court may not weigh this conflict in the evidence.

The respondent urges that whether the appellant did or did not litigate the question of the *in personam* jurisdiction of the Illinois court over him, it could not be controlling here for the reason that such court at all times had personal jurisdiction over the appellant under the authority of the Illinois statutes, to render a money judgment against him for the support of the minor children of the marriage. From the record before us it is not apparent, as a matter of law, that the court had such jurisdiction.

■ The Illinois Legislature had the power to lay down the rules, within the concept of due process, under which the courts of that state could acquire jurisdiction over a nonresident by personal service of process outside the territorial limits of the state. (*Milliken* v. *Meyer* (1940) 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357]; *International Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed.95, 161 A.L.R. 1057]; *Owens* v. *Superior Court*, 52 Cal. 2d 822 [345 P.2d 921, 78 A.L.R.2d 388].) The Legislature exercised this power by the enactment of section 17, chapter 110 of the Civil Practice Act, *supra*. Under the provisions of subsection (3) of section 17 ''Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.'' At the time the divorce action was filed and service of the summons and complaint was had upon the appellant in California, such an action was not one in which the Legislature had authorized an Illinois court to obtain *in personam* jurisdiction over a nonresident by personal service of process outside the territorial limits of the state. Such jurisdiction, was, however, given by the 1965 amendment by the addition of subdivision (e) to chapter 110, section 17, subsection (1) of the Civil Practice Act. While it has been held by the Illinois appellate court that this section is procedural in its nature and may therefore be applied retrospectively, this does not mean that the 1965 amendment may be applied so as to give vitality to process issued and served many years before its enactment. Furthermore, it is not apparent from the record here that the appellant was guilty of a tortious act (subdivision (b), subsection (1)) which gave rise to the plaintiff's cause of action for divorce.

If at the time the divorce action was filed and service of process therein was personally made on the appellant in California he was not in fact a bona fide domiciliary of the State of Illinois, and if he had in fact established a bona fide domicile in the State of Arizona, as claimed by the appellant, the Illinois court, under the law as it existed at that time, did not obtain *in personam* jurisdiction over him by personal service of its process outside its territorial limits.

The summary judgment is reversed.

Shinn, P. J., and Kaus, J., concurred.

A petition for a rehearing was denied May 5, 1966, and respondent's petition for a hearing by the Supreme Court was denied June 17, 1966.