[No. 3,959.]

# CORNELIUS K. GARRISON v. CORNELIUS Mc-GOWAN AND MARCUS A. EDMONDS.

ATTORNEY AT LAW.—If a person has been admitted to practice as an attorney at law in another State, and has been accustomed to practice here, and been recognized by the Courts and bar here as a member of the bar, he is, *de facto*, an officer of the Court in this State, and the validity of his acts as an attorney cannot collaterally be called in question.

IDEM.—The entry of the appearance of a defendant by such attorney is of the same effect as though the attorney had been admitted to practice in the Courts of this State.

ENTERING APPEARANCE BY ATTORNEY AT LAW.—If an attorney at law, who has no authority to do so, enter the appearance of a defendant in an action without the service of process, and the fact of the want of authority is made to appear, the entry of the appearance is void.

RELIEF AGAINST JUDGMENT RENDERED ON APPEARANCE BY AN ATTORNEY.— The presumption is that the attorney who enters the appearance of a defendant, without service of process, was authorized to do so, and one who seeks relief in equity from a judgment rendered against him, on an appearance entered by an attorney, must make out a clear case of want of authority in the attorney, and must show clear merits, and take prompt action.

PRESUMPTION THAT ATTORNEY WAS EMPLOYED TO ENTER AN APPEARANCE.— If an agent of an absent defendant has been in the habit of employing an attorney at law for the absent defendant, and has paid him for services out of the funds of such defendant, and such defendant was in the habit of leaving the conduct of his suits with such agent, the presumption is that an appearance entered by such attorney for said defendant was by authority.

THE plaintiff was and had been for many years a resident of the City of New York, and was the owner of a lot at the intersection of Drumm and Washington streets, San Francisco, of the value of about forty thousand dollars, having several buildings upon it, which were rented to tenants. In 1865, the plaintiff appointed Martin R. Roberts his attorney in fact, by a power in writing, which was acknowledged, giving his attorney power to rent his property, execute leases, collect rents, and to take general charge and control of his houses and lands, and to collect all sums due the plaintiff in California. The power was recorded on the 20th day of October, 1865. The plaintiff, on the 31st day of March, 1870, revoked the power to Roberts, and by another

power in writing, appointed O. C. Pratt his attorney in fact, with full power to act for the plaintiff in all matters pertaining to the plaintiff's interests in California. The latter power was likewise recorded on the 23d day of June, 1870. On the 10th day of June, 1870, Roberts surrendered up to Pratt the agency. On the 19th day of July, 1869, the Board of Supervisors of the City and County of San Francisco passed a resolution declaring its intention to order a redwood sewer to be constructed in Washington street, from Drumm to East street, and such proceedings were afterwards had that the contract to construct the same was awarded to defendant McGowan, on the 16th day of August, 1869. McGowan performed the work, and an assessment of six hundred and sixty dollars and forty-three cents was levied on the plaintiff's lot for the same. On the 14th day of February, 1870, the assessment not having been paid, McGowan, by Hale and Edmonds (defendant Edmonds), his attorneys, brought suit against Garrison to enforce a lien on the lot for the assessment. The summons was not served, and, on the 12th day of April, 1870, H. K. Moore signed an appearance for the defendant, of which the following is a copy:

"C. McGOWAN
 v.
"C. K. GARRISON.

"I hereby appear as attorney for the defendant, C. K. Garrison, in the above-entitled cause, to defend the same for him.

"H. K. MOORE,
"Defendant's Attorney.

"San Francisco, April 12th, 1870."

The appearance was filed with the Clerk, on the 16th day of July, 1870. No answer or demurrer was filed; and, on the 26th day of August, 1870, Hale & Edmonds gave written notice to Moore that they would, on the 2d day of September, 1870, apply to the Court for final judgment. On the 5th day of September following, the Court rendered a final judgment enforcing the lien, and directing a sale of

the property.   The Sheriff sold the property under the de-- cree, on the 4th day of October, 1870; defendant Edmonds. became the purchaser for the sum of eight hundred and nine and two tenths dollars, being the amount of the judg-- ment, interest and costs; and on the 25th of April, 1871, received a Sheriff's deed.   On the 11th day of September, 1871, the Sheriff's deed was recorded.   The plaintiff alleged. in his complaint, that he did not know of the suit or pro- ceedings until the 21st day of September, 1871.

This was a suit in equity to have the judgment in. McGowan v. Garrison vacated, and to have the defendant Edmonds enjoined from setting up, or asserting title under the Sheriff's deed, and to compel him to convey the prop- erty to Garrison.

The plaintiff, in his complaint, did not aver that the assessment was not legally or justly due; or that there was any informality in the proceedings under which it was levied; or that he had any defense to the action of Mc- Gowan v. Garrison if the judgment was vacated, but offered to pay, and brought into Court the full amount of the judg- ment, all costs and interest, and an additional sum for ex- penses of attorneys, etc.   There were allegations in the complaint of collusion between Moore and Edmonds, con- cerning the notice of appearance and default; but these allegations were denied in the answer.   The Court below rendered a judgment vacating the judgment of McGowan v. Garrison, and enjoining Edmonds from setting up title to the property, and directing him to execute a conveyance to Garrison.   The defendants appealed.

The other facts are stated in the opinion.

J. P. Hoge and J. F. Reynolds, for the Appellants.

Moore was employed and appeared in virtue of his em- ployment.   He had been admitted to the bar in New York, and was a practicing lawyer here.   He was uniformly rec- ognized as a member of the San Francisco bar, and, if not actually, formally admitted and licensed in our Courts; the fact was not suspected, even by himself.   He only discov- ered the fact when the discovery became important, as he supposed, in the prosecution of this suit.

But it is not important. Attorneys from other States, when sufficiently distinguished, or 'personally known to the Court, are often permitted to practice in our Courts, *ex gratia*, without a formal admission. It is a mark of distinction; and no one ever suspected that, in such cases, the acts of counsel, so practicing, were not binding on their clients. It might be otherwise if there were no employment. But Garrison is bound by the employment. (*Lawson* v. *Bettison*, 7 Eng. 413–417.) And not merely by his employment in the McGowan suit, but by his previous employment, which had then been constant and uninterrupted for the space of two years. Under our statutes, it is a matter entirely between the Court and the person acting as an attorney, whether he shall practice without a license. If he does so, the Court may punish him for contempt. But our statutes have never gone beyond that. (Hittell, Art. 398, Code C. P. 281.)

The statutes (2 Geo. 2, Ch. 23, Secs. 17, 24; 22 Geo. 2, Ch. 46, Sec. 11; 37 Geo. 3, Ch. 90, Secs. 30, 31,) imposed penalties on persons practicing without admission; and further, under 37 Geo. (Ch. 90, Secs. 30, 31,) attorneys who failed to take out their certificates, were declared incapable of practicing. Yet a plaintiff, whose attorney had not taken out his certificate, did not even lose his costs. (*Reeder* v. *Bloom*, 3 Bingh. 9, 10.)

And in another case, the person acting as attorney was not an attorney at all—his name was not on the rolls—yet the Court refused, at the instance of the opposite party, to set the proceedings aside on that ground. (*Hardiny* v. *Purkiss*, 2 Marsh. 228, 229.)

A party cannot have relief in equity against a judgment, "who gives no reason why in equity he ought not to pay it." (*Stokes* v. *Knarr*, 11 Wis. 391; *Ableman* v. *Roth*, 12 Id. 91; *Gregory* v. *Ford*, 14 Cal. 142, 143; *Gibbons* v. *Scott*, 15 Id. 286; *Borland* v. *Thornton*, 12 Id. 440, 445–8; *Secor* v. *Woodward*, 8 Ala. 501; *Crafts* v. *Dexter*, 8 Id. 767; *Lawson* v. *Bettison*, 7 Eng. 417; *Irby* v. *McCrae*, 4 Dessau Eq. 428–9; *Walker* v. *Robbins*, 14 How. (U. S.) 584; *Shottenkirk* v. *Wheeler*, 3 Johns. Ch. 280; 2 Sto. Eq. secs. 898, 1570, *et*

*seq.*; *Simpson* v. *Simpson's Ex.* 3 Litt. 141, 147; *Patterson* v. *Matthews*, 3 Bibb. 80, 81; *Warner* v. *Conant*, 24 Vt. 353, 354.)

And the rule is so well settled that it is applied to attorneys as well as other agents. When they have been actually employed, their omissions are as binding as their acts, and their negligence will preclude relief in equity in all cases, unless excused. And like that of the party himself, the negligence of the attorney or agent can only be excused by the act of the opposite party, or by inevitable accident. (*Burton* v. *Wiley*, 26 Vt. 430, 432; *Lawson* v. *Bettison*, 7 Eng. 413–417; *Stokes* v. *L. and S. T. Co.* 6 Humph. 248; *Jones* v. *Williamson*, 5 Cold. Tenn. 371; *Barrow* v. *Jones*, 1 J. J. Marsh, 471; *Jones* v. *Pitt's Heirs*, 3 Litt. 427, 430; *Quinn* v. *Wetherbee*, 41 Cal. 247; *Jamison* v. *May*, 8 Eng. 608; *White* v. *U. S. Bank*, 6 Hammond, 530; *Green* v. *Dodge*, Id. 80; *Dorflinger* v. *Coil*, 2 Id. 311, 312; *Green* v. *Robinson*, 6 How. Miss. 80.)

No excuse is shown for not paying the judgment which does not rest exclusively in the negligence of Roberts or Pratt. No accident is shown or averred.

The neglect of a party's own agent is the neglect of the party himself. (Story on Agency, sec. 452.)

A principal is responsible to third persons for the negligences and even the frauds of his agent; (*Id.; Bank U. S.* v. *Davis*, 2 Hill, 462–464,) and cannot, of course, shield himself behind such negligence when it results in loss to himself. This is well settled; and it is on this principle that notice to an agent is held to be notice to the principal, because the latter cannot be heard to assert his agent's neglect of duty, as against an innocent third party. (*Bierce* v. *Red Bluff Hotel Co.* 31 Cal. 165; *Bank U. S.* v. *Davis*, 2 Hill, 461–464; *Merch. Bank* v. *Seton*, 1 Peters, 309.) And hence the neglect of an agent entrusted with the defense of a suit will preclude relief in equity, in the same manner as the neglect of the party himself.

Moore was the attorney of record, and the only one on whom notice could be served. Notice served on Pratt would have been null and void, and might have been dis-

regarded.   Edmonds had agreed with Moore to give him
notice before entering a default, and had a right to insist
on serving the notice on the attorney of record.   (*Grant* v.
*White,* 6 Cal. 55; *Parker* v. *Williamsburgh,* 13 How. Pr. R.
250, 251; *Jerome* v. *Boeram,* 1 Wend. 293, 295; *United States*
v. *Curry,* 6 How. U. S. 106, 111; Hittell, Art. 400, 401; 1
Grah. Prac. 22, 23; 1 Tidd's Practice, 108, 94.)

*T. H. Rearden,* for the Respondent.

Attorneys are officers of the Court, and can only appear
for and represent parties by its license.   (*Clark* v. *Willett,*
35 Cal. 539.)   In the modern English decisions, a distinc-
tion is made where the attorney appears without authority,
between cases where defendant has and where he has not
been served.   (See *Bayley* v. *Buckland,* 1 Exch. 1 Wels.
H. & G. 1, 1847; 16 L. J. N. S. Exch. 204.)   "If,"·says the
Court, "the process has been served, and the plaintiff
be innocent of any fraud or collusion and the attorney is
responsible, the party for whom the attorney appeared is
confined to his remedy against him."   The reason given,
is that the plaintiff is without blame, and the defendant is
guilty of negligence by not appearing and making defense
by his own attorney, if he has any defense on the merits.
But, on the other hand: "If the plaintiff, without serving
the defendant with process to appear, accepts an appear-
ance entered for him by an unauthorized attorney and pro-
ceeds to judgment, the Court will set aside the judgment
with costs, and leave the plaintiff to recover by summary
proceedings against the delinquent attorney those costs and
the expenses to which he has been put by him."   "The
plaintiff in such case is not wholly free from the imputation
of negligence; the law requires him to give notice to the
defendant by serving the writ, and he has not done so.
The defendant, therefore, is wholly free from blame, and
the plaintiff not."   ·

The distinction taken is a reasonable one; and, on prin-
ciple, and in view of the tendency of modern judicial opin-
ions, the true rule of law is thought to be that a party not

served, who has been represented by an unauthorized attorney, has a right to be relieved against the judgment on motion or by bill in equity, and this right does not depend upon the ability of the attorney to respond in damages. The judgment of *McGowan* v. *Garrison* was absolutely void for want of all jurisdiction in the Court which rendered it. Garrison was not served with process, nor did any attorney of the Court appear for him. Moore's appearance, he being at the time only a private person, and not an attorney, could neither affect or bind any one. Hence the judgment entered by default against Garrison was a nullity, and could neither legally affect his person or property, and, it became the duty of the Court to so adjudge when proof was made that its action and decree were not supported by jurisdiction obtained over either.

By the Court, WALLACE, C. J.:

1. There is not even the slightest evidence of fraud upon the part of Moore nor of Edmonds, nor, indeed, of any other person, in the proceedings resulting in the judgment in favor of McGowan and against Garrison. Edmonds, as the attorney of McGowan, had no relations with Garrison, nor with Pratt, his agent, which involved the duty upon his part, to consult with the latter or give him any special notice of the pendency of the suit of McGowan against Garrison. That duty belonged to Moore, who was the attorney of record for Garrison in that action, and Moore testified that he distinctly notified Pratt (who had, in the meantime, become the agent and attorney in fact of Garrison,) of the pendency of the suit of *McGowan* v. *Garrison*, and that this notice was given before the sale of the property had taken place, and in ample time to have prevented the sale. Moore was cross-examined by Pratt, at the trial, and being inquired of as to the fact of his having given him this notification, said: "I went to your office; I opened the door and went in. You were standing by the table talking with a gentleman. I mentioned to you there was the suit of *McGowan* v. *Garrison*, a street assessment suit, which ought to

be attended to. You stopped me, put your hand up, and said, 'I know all about it; I will attend to it.' That is all you said, sir, and I went out." If, as Pratt testifies, he did not comprehend the import of this distinct notification given him by Moore, that circumstance would not tend to show that Moore was acting fraudulently or in bad faith in attempting to bring the matter to his attention. That Pratt did not understand Moore is rather to be attributed to a possible indisposition upon his part to listen, as he testifies that at that time, for particular reasons he "did not wish to have any particular conversation with Mr. Moore beyond what was actually essential." Moore certainly seems to have done his whole duty in giving, or endeavoring in good faith to give, information to Pratt, which, had it been listened to, would have protected Garrison from the subsequent loss of his property.

2. Moore, although he had not in fact been admitted to practice in the Courts of this State, by order entered in the usual manner, had been regularly admitted an attorney and counselor of all the Courts of the State of New York, at a general term held in the city of New York on the 25th day of November, 1862, and might have been admitted to practice in the Courts of this State upon motion. This motion he believed had been made, and the usual order of admission obtained; and, acting upon that belief, he had been accustomed to appear in the Court below as an attorney and counselor, conducting business there without challenge or question from any quarter. He had been habitually recognized by the Court as a member of its bar. He was, therefore, in any view, *de facto*, an officer of the Court, and the validity of his acts as to third persons cannot collaterally be called in question. The appearance of the defendant, entered by Moore as his attorney, in the action of *McGowan* v. *Garrison*, must be regarded, therefore, as of the same import, in all respects, as though Moore had been admitted to practice in the Court below by the entry of the usual order of admission.

3. If an attorney at law, having no authority to do so, enter the appearance of a defendant in an action without

the service of jurisdictional process, and the fact of the want of the authority be made to appear, such proceeding is void as to the defendant, whose appearance has been so entered. But the act of the attorney in entering the appearance of a defendant, carries with it a presumption of due authority upon his part to do so. Therefore, if, after an appearance entered, judgment be rendered against the defendant, and the latter seeks relief against the judgment on the ground of want of authority of the attorney to enter his appearance, it is incumbent upon such party "to make out a clear and unmixed case." He is required "to show clear merits; to take prompt action, and to establish his right by cogent and strong evidence." There would, indeed, be but little security afforded by judicial proceedings had, if a party who had been unsuccessful in litigation could overthrow or defeat them upon mere suggestion of want of authority in his attorney to appear for him, or to conduct the controversy upon his behalf; and it would, from the nature of the case, usually be a work of much difficulty for the opposite party to show the authority, even if it existed. It is apparent that the proof upon the part of Garrison here was not sufficient to overcome the presumption of authority in Moore to enter his appearance as a defendant in the action brought by McGowan. There is really no proof whatever that Moore did not have the requisite authority in that behalf. Roberts, who had long been the attorney in fact of Garrison in California, had been accustomed, in other cases, to employ attorneys about the business of Garrison, and Moore was one of the attorneys who had been thus employed.

4. To say that he had no authority to employ Moore as an attorney for his principal in the McGowan suit is to ignore a uniform course of business pursued by Roberts for a number of years, with the knowledge, and at least the tacit approval of Garrison. Roberts had during the time repeatedly engaged the services of Moore about the law business of Garrison; had paid him with the funds of Garrison for his services in such business, and to this course of business the latter had never made an objection. It ap-

pears to have been the habit of Garrison to leave the general conduct of suits in California with Roberts, as his agent. This is the purport of Roberts' testimony at the trial, and it is uncontradicted. Moore himself testified that in all cases (including, of course, the case of *McGowan* v. *Garrison*) in which he had appeared for Garrison, he was employed to do so by Roberts, the agent of Garrison. In fact, the evidence given at the trial, so far from displacing the presumption of the rightful authority of Moore to appear, directly establishes the fact of his employment by Roberts for that purpose, and that the latter had the requisite authority from Garrison in the premises.

Judgment and order denying a new trial reversed, and cause remanded for a new trial. Remittitur forthwith.

Neither Mr. Justice CROCKETT nor Mr. Justice McKINSTRY expressed an opinion.