[No. 2130]

# H. C. CHRISTENSEN, APPELLANT, *v.* C. H. DUBORG, H. ANDERSON, AND M. SKOW, RESPONDENTS.

[150 Pac. 306]

1. BROKERS—COMMISSIONS—WHEN EARNED.

Defendants employed plaintiff to procure a purchaser for stock in the P. Company. On September 9, 1909, after his contract had expired S. took an option to purchase the stock for $125,000, and defendants agreed in consideration of the services rendered in the sale of the stock to pay plaintiff 10 per cent commission. Subsequently they executed a compromise agreement, agreeing to pay plaintiff $3,000 commission on the sale of such stock. S. did not exercise the option and made no payments on the stock. *Held*, that plaintiff was not entitled to a commission, as the so-called compromise was only a compromise of the amount, and it was to be paid only upon the actual consummation of the sale.

2. BROKERS—ACTIONS FOR COMMISSIONS—PLEADING—VARIANCE.

Plaintiff sued, alleging that prior to September 9, 1909, he performed services in procuring the sale of stock; that defendants agreed to pay him 10 per cent commission on all moneys received from the sale of the stock as received and thereafter, by way of compromise, agreed to pay him $3,000 for such services. The evidence showed that two of the defendants, after S.'s option to purchase had expired and after they had purchased the stock of the third defendant, agreed with S., in consideration of the allotment to them of 3,000,000 shares of the stock of another company, to transfer to such company a controlling amount of the stock of the P. Company, and to convey to it certain land; that sales were to be made to develop certain properties and raise $325,000, which was to be divided equally between the parties to the agreement; and that a sale of all or part of such 3,000,000 shares was made from which such two defendants realized a large sum of money. *Held*, that plaintiff could not recover, because of variance.

3. PAYMENT—OPERATION AND EFFECT—ADMISSION OF LIABILITY.

Plaintiff performed services in attempting to procure a purchaser for corporate stock for which he claimed he was entitled to $3,000 from defendants. In an interview with defendants one of them said he was entitled to something, and they offered him $500, which he refused. He offered to settle for $1,500, but defendants offered him $750, stating that they would pay him more later, and he accordingly accepted the $750. *Held*, that there was no recognition by defendants of any legal liability to plaintiff by virtue of the former contractual relations, and the payment of the $750 did not change their moral obligation to plaintiff into a legal debt.

APPEAL from Second Judicial District Court, Washoe County; *Cole L. Harwood*, Judge.

Action by H. C. Christensen against C. H. Duborg and others to recover for services alleged to have been rendered in procuring the sale of mining stock. From a judgment for defendants and an order denying a new trial, plaintiff appeals. **Affirmed.**

*Thomas A. Brandon* and *Fred B. Hart,* for Appellant:

If the principal and a third person enter into a contract as a result of the agent's intervention, the agent is not deprived of his right to compensation by the fact that the contract so concluded differs in terms from the one he was employed to negotiate. (*Scovell* v. *Upham,* 56 N. W. 812; *Goech* v. *Company,* 96 S. W. 431; *Reynolds* v. *Tompkins,* 23 W. Va. 229; *Dexter* v. *Campbell,* 137 Mass. 198; *Nash* v. *Hill,* 62 Ill. 216; *Nesbitt* v. *Helsey,* 49 Mo. 383.) If the agent be the procuring cause of the transaction, he is entitled to compensation for effecting it. (*Wasmer* v. *McLean,* 49 N. H. 463; *Sinclair* v. *Galland,* 8 Daly, 508; *Germander* v. *Hansen,* 27 L. T. R. 394; *Stinde* v. *Bleache,* 42 Mo. App. 578.) If the principal puts it out of his power to sell, he is then liable for the the agent's services. (*Ford* v. *Easley,* 55 N. W. 336; *Fox* v. *Rouse,* 11 N. W. 384.)

The court below erred in adopting the theory of the respondents that there was a variance between the proof and the allegations of the complaint. (*Peters* v. *Foss,* 20 Cal. 586; 2 Abbott, Trial Ev. 340, 523–529; *Randall* v. *Rich,* 11 Mass. 494; *Ainslee* v. *Wilson,* 7 Cow. 662; *Ralston* v. *Wood,* 15 Ill. 171; *Eppinger* v. *Kendrick,* 114 Cal. 620; *Bank* v. *Sherman,* 33 N. Y. 69; *Edgerton* v. *West,* 30 South. 797; *Whitaker* v. *Engles,* 69 N. W. 493.)

*George Martinson* and *B. F. Curler,* for Respondents:

It was necessary to allege the performance of the contract on the part of the plaintiff. (19 Cyc. 274; *Sullivan* v. *Milliker,* 113 Fed. 93, 99.) The complaint should allege a sale, or that the plaintiff procured a purchaser who was ready, willing, and able to purchase. (*Jacobs* v. *Shenon,* 29 Pac. 44; *Booth* v. *Moody,* 46 Pac.

884; *McGavock* v. *Woodliff*, 20 How. 222, 15 L. Ed. 884; *Chaffee* v. *Widman*, 139 Am. St. Rep. 245, note.)

An agent, who produces a person who enters into a conditional agreement of option only, has not produced a purchaser, and is not entitled to commission. (*Keach* v. *Bunn*, 116 Ill. App. 397; *Dyer* v. *Raborn*, 33 Pac. 350; *Yeager* v. *Kelsey*, 49 N. W. 199; *Massie* v. *Chattom*, 163 Cal. 772; *Smith* v. *Post*, 138 Pac. 705.)

By the Court, COLEMAN, J.:

This is an appeal from a judgment in favor of the respondents, following an order sustaining a motion for a nonsuit, and from an order denying a motion for a new trial.

Appellant, who was plaintiff in the trial court, brought suit against the respondents, Duborg, Anderson, and Skow, to recover judgment in the sum of $2,250. Omitting the formal portions of the amended complaint, it reads as follows:

"That prior to the 9th day of September, A. D. 1909, he performed services for defendants as their agent in procuring the sale of 500,000 shares of Philadelphia Western Mining stock, at their special instance and request; that on the 9th day of September, A. D. 1909, for and in consideration of plaintiff's said services rendered as aforesaid, the defendants agreed in writing to pay to the plaintiff 10 per cent commission on all moneys received from the said sale of said stock as the same was received; that thereafter plaintiff and defendants entered into a further agreement by way of compromise as to the amount of said compensation, defendants thereby agreeing to pay plaintiff for his said services the sum of $3,000, and plaintiff agreed to take said sum in full compensation for his said services; that thereafter defendants paid plaintiff on said last-mentioned agreement the sum of $750, and no more, leaving a balance due and unpaid on said last-mentioned agreement of the sum of $2,250."

From a careful reading of the amended complaint it will be seen that appellant bases his cause of action upon

three facts, viz: First, that prior to September 9, 1909, he procured a sale of certain stock; second, that on September 9, 1909, respondents, in consideration of his said services (already performed), agreed to pay 10 per cent of all moneys received from the sale of said stock; and, third, that thereafter appellant and respondents entered into a compromise as to the amount which appellant was to receive, fixing a flat sum of $3,000.

The first question to be determined is: Did appellant procure the sale of the stock mentioned? If he did not, the question of the amount of the compensation agreed upon, if any, need not be considered.

[1] The evidence given in behalf of appellant tends to show that in July, 1909, he entered into an agreement with respondents to procure for them a purchaser for 600,000 shares of stock in the Philadelphia Western Mining Company, and in the event of the sale, pursuant to the terms of the contract, he was to receive a certain commission as compensation for his services. After procuring this contract, appellant went to Goldfield, where he induced one M. C. Scully to visit and examine the property of the company, but no sale was made under the terms of the contract. A contract, however, in the nature of an option to purchase, was entered into between the respondents and said Scully on September 9, 1909, after appellant's July contract had expired. By its terms respondents agreed to place in escrow with the Nixon National Bank of Reno 500,000 shares of the Philadelphia Western Mining Company's stock to be delivered to said Scully, his heirs or assigns, upon the payment by Scully, on or before April 1, 1910, to the bank, to the credit of respondents, of $125,000.

At or about the time of the making of the option agreement with Scully a paper, of which the following is a copy, was executed by the respondents:

"Rock Creek Canyon, Sept. 9th, 1909.

"For and in consideration of the services rendered as agent in the sale of 500,000 shares of Philadelphia Western Mining stock, we, the undersigned, hereby agree

to pay to H. C. Christensen 10 per cent. commission, such commission to be paid each time a payment on said stock is made.          . [Signed]          C. H. Duborg,
                                   "Henry Anderson,
                                   "M. Skow.

The evidence on the part of appellant tended to show (and it is not disputed, as we understand it) that the services mentioned in the statement of September 9, just quoted, related to the option agreement between respondents and Scully of even date, that in the event Scully complied with the terms of his option, appellant would be paid.     Thereafter a statement was signed by respondents, of which the following is a copy:

                              "Hilltop, Sept. 9th, 1909.
   "We, the undersigned, owners of 500,000 shares of Philadelphia Western Mining stock, do hereby agree to to pay to H. C. Christensen ($3,000.00) three thousand dollars commission on the sale of said stock.
                    " [Signed]          C. H. Duborg,
                                   "Henry Anderson,
                                   "M. Skow."

While appellant testified that he thought this statement was signed about two months after its date, he said it might have been as late as March, 1910, that it was signed; the appellant dating it September 9, 1909, as he testified, to connect the transaction with the Scully option.     Scully paid nothing upon the stock under the option agreement, which expired April 1, 1910.

Had all dealings between the respondents and Scully ceased upon the failure of Scully to comply with the terms of the option to purchase the stock mentioned, it is clear that the appellant would have no cause of action against respondents, for the reason that there was no sale.     The so-called compromise was only a compromise of the amount, and it was to be paid only upon the actual consummation of the sale.     We think the authorities are practically unanimous to the effect that before a broker

is entitled to a commission for making a sale, where an option is taken, the payments provided for in the option agreement must be made. ·. (19 Cyc. 253.)

"A contract by a broker to find a purchaser for land is not performed, so as to entitle him to a commission, where he procures one who merely obtained an option on the land, and made no offer to purchase." (*Dinkelspiel* v. *Nason*, 17 Cal. App. 595, 120 Pac. 790, citing authorities.)

See, also, 19 Cyc. 252; *Aigler* v. *Carpenter Place Land Co.*, 51 Kan. 718, 33 Pac. 593; *Keach* v. *Bunn*, 116 Ill. App. 397; *Lawrence* v. *Pederson*, 34 Wash. 1, 74 Pac. 1011; *Massie* v. *Chattom*, 163 Cal. 772, 127 Pac. 56.

[2] The court sustained an objection to an offer of proof on the part of the appellant to show that on June 29, 1910, about three months after the option held by Scully had expired, respondents Duborg and Anderson, who had then purchased the stock of respondent Skow, entered into an agreement with said Scully, wherein it was recited that, in consideration of the allotting to the said Anderson and Duborg by Kimberly Consolidated Mines Company of 3,000,000 shares of its capital stock, the said Anderson and Duborg would transfer to that company the controlling number of shares of the capital stock of the Philadelphia Western Mining Company, and convey to it a certain 40-acre tract of land; that sales were to be made from the 3,000,000 shares of Kimberly Consolidated Mines Company stock to develop and operate certain properties controlled by the company, and to raise the further sum of $325,000, which was to be divided equally between the parties to the agreement; that, through the efforts of Scully and another party whom he had interested in the venture, a sale of all or a portion of the 3,000,000 shares of the Kimberly Consolidated Mines Company stock was made, from which Anderson and Duborg realized a large sum of money.

We do not think the court erred in sustaining the objection to this offer. It will be observed that the option agreement which appellant was instrumental in

procuring had expired; that Skow, one of the parties to the original contract with him, had disposed of his interest to the other two parties to it; that another element· entered into the transaction offered to be proved, viz: the 40-acre tract of land; that a trade was sought to be established, and not a sale; and that the stock was sold for a "larger sum of money," and not for the amount called for by the terms of the option agreement.

Appellant brought his suit upon the theory that a sale had been made "prior to the 9th day of September, A. D. 1909," and not upon the theory of having been the procuring cause of a trade between Scully and different parties from those who signed the statement of September 9, and upon an additional consideration moving to Scully; in fact, the evidence sought to be introduced would tend to prove an entirely different state of facts from those pleaded.

"It is a fundamental rule that judgment shall be *secundum allegata et probata*, and any departure from that rule is certain to produce surprise, confusion, and injustice. Pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them; and if a party can allege one cause of action, and then recover· upon another, his pleadings can serve no useful purpose, but will rather ensnare and mislead his adversary." (9 Cyc. 748.)

"There are cases which have proceeded in disregard of the pleadings and wherein the whole case has been presented by both parties in their proofs without objection, in which an amendment has been allowed after the evidence was closed to conform the pleadings to the proofs. But, when objection is seasonably taken, or an exception presents the question, it is fatal to a recovery that it does not conform in all material respects to the allegations of the pleadings. The court will not ignore the whole office of a pleading and compel the parties to try their cases in the dark." (9 Cyc. 750.·)

See, also, 19 Cyc. 275.

When a litigant finds that the facts will not sustain the cause of action pleaded, but will justify a recovery upon another theory, he may make an application to the court to amend his pleading, and upon a proper showing and terms the court may, in its discretion, permit an amendment; or a plaintiff who finds that he cannot sustain the cause of action alleged, and thinks that there are sufficient facts to sustain a different kind of action, may, under our statute, at a certain stage of the trial, abandon his case, whereupon a judgment of nonsuit will be entered by the court. (Rev. Laws, sec. 5237.) Such a judgment is no bar to another action.

[3] It was shown in evidence that appellant was paid $750 by defendants Duborg and Anderson in November, 1911. Plaintiff testified:

"Q. At the time of the payment of the $750 to which you testified yesterday, did you have any conversation with Mr. Duborg and Mr. Anderson at that time? A. Yes.

"Q. Will you state what that conversation was? A. I told Mr. Anderson and Mr. Duborg that the $3,000 was due me, that they had received their money to the amount of $1,000, * * * and that my money was due, this $3,000, and I had come down to get it.

"Q. What did they say? A. Mr. Anderson said that I was entitled to something, and they agreed to pay me $500 first; Mr. Duborg offered me $500 first; and I told Mr. Duborg it was not enough, that I had waited a long time for it, and I expected to get it all.

"Q. What did they say further, if anything? A. Mr. Anderson said they had concluded I was entitled to something, and they would pay me. Mr. Duborg said they would pay me $500.

"Q. What did you say to that? A. I said it was not enough. I told them first that they had received their money, and Mr. Anderson said that they had a lot of money to pay out besides.

"Q. Did he mention in what way? A. He told me they had paid their attorneys $10,000, and they said they

had to give Matt Skow considerable money, and that there might be other things coming up they would have to pay for. Finally Mr. Duborg offered me $750. I then offered to settle for $1,500 altogether, but they didn't seem to want to do that. Mr. Anderson said they would pay me some more after a while, so I agreed to take the $750 that day, and Mr. Anderson told Mr. Duborg to make me out a company check, which he did. He handed me the check at one of the desks in the Nixon National Bank, and I asked if he wanted a receipt, and he said 'No,' and I took the check and went to the window, to the cashier's window, and got my money in gold."

The $750 which appellant testified he received was paid by a "company check"; and, assuming this payment to have been made by respondents Duborg and Anderson, it does not strengthen the case of appellant. The only inference deducible from the testimony relative to this payment is, we think, that Anderson and Duborg would not recognize a legal liability by virtue of the former contractual relations, but that they considered appellant morally "entitled to something," not because of the terms of the contract, but because his efforts were entitled to some consideration. As said in 30 Cyc. 1220: "Part payment will not change what was originally a mere moral obligation into a legal debt."

Perceiving no prejudicial error, it is ordered that the judgment appealed from be affirmed.