[L. A. No. 23254. In Bank. Nov. 4, 1955.]

THE GAGNON COMPANY, INC. (a Corporation) et al., Appellants, v. NEVADA DESERT INN, INC. (a Corporation) et al., Defendants; STANLEY BURKE, Respondent.

J. George Bragin and H. Ward Dawson, Jr., for Appellants

Pearlson & Pearlson and Herbert Pearlson for Respondent.

CARTER, J.—Plaintiffs, alleging that they were stockholders of Nevada Desert Inn, a Nevada corporation, commenced the instant action asserting it to be on their behalf and as representatives of the other stockholders. Among the

defendants are the Desert Inn and Burke, a director and officer of Desert Inn, other directors of the inn and also Lela M. Anderson and Harold M. Morse. Burke was the only defendant who answered the complaint. Presumably the others had not been served.

Plaintiffs alleged that defendant Burke had fraudulently breached a contract with the inn under which he was to hold property in trust for it and supply funds to assist in the financing of the construction of a hotel in Las Vegas, Nevada, and he was to take stock in the inn. They charged that he fraudulently took inn funds; that the other directors knew of Burke's actions and yet they did not stop him; that the directors mismanaged the affairs of the inn and misappropriated the funds thereof. They also alleged fraud on the part of defendant Barkley in the sale of the stock to them, and that Morse, attorney for some of the stockholders in an action commenced in Nevada against the directors, negligently permitted the action to be lost on nonsuit.

Burke answered and raised the defense of res judicata by reason of a judgment by a Nevada court of the eighth judicial district. The judgment which the trial court herein found to be res judicata came about as follows:

In 1947 the inn commenced an action in the proper Nevada court. The complaint filed therein was verified by Lela Anderson who stated therein that she was the secretary of the inn. This action is hereafter called second Nevada action. The complaint was signed by Morse and Graves, a firm of Nevada attorneys, by Harold M. Morse, as attorneys for plaintiff therein. The action made substantially the same charges against Burke as are made in the instant action. Burke answered raising the general issue. A "Dismissal with Prejudice" signed by Morse and Graves, by Harold M. Morse, as attorneys for the inn was filed in that action on November 16, 1950 (the instant action was commenced on April 11, 1949), and based thereon the Nevada court on the same day made its order that it appearing that plaintiff (the inn) having filed its written dismissal of the action with prejudice and on motion of Morse and Graves, attorneys for plaintiff, the action is "dismissed with prejudice." Prior to the above mentioned Nevada action a similar action by the inn, with Morse as counsel, had been commenced and tried and resulted in a nonsuit, hereafter referred to as first Nevada action.

Plaintiffs here describe their action as "derivative" and insofar as they, as stockholders of the inn, are seeking redress

for wrongs done the inn, it is such an action. ■ "A stockholder's representative suit has been called a 'derivative action' for the reason that the wrong to be redressed is one against the corporation, and normally the corporation would bring the suit. Where, however, the corporation fails or refuses to act after proper demand, the stockholder's ultimate interest in the corporation is sufficient to justify the bringing of a 'propulsive' action, designed to set in motion the judicial machinery for the redress of the wrong to the corporation." (*Klopstock* v. *Superior Court*, 17 Cal.2d 13, 16 [108 P.2d 906, 135 A.L.R. 318].) ■ And, "Generally, a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his stock and the stock of the other shareholders, for such an action would authorize multitudinous litigation and ignore the corporate entity. Under proper circumstances a stockholder may bring a representative action or derivative action on behalf of the corporation. [Citations.] ■ '. . . The action is derivative, i. e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' " (*Sutter* v. *General Petroleum Corp.*, 28 Cal.2d 525, 530 [170 P.2d 898, 167 A.L.R. 271].) ■ Being a derivative action, a judgment on the merits against the corporation on the wrong alleged to have been done to it would ordinarily be res judicata in an action by the stockholders on behalf of the corporation for the same wrong. This follows because the wrong was to the corporation as such and not the stockholders individually, hence a bar to an action by the corporation would be a bar to an action by the stockholders for the corporation. (*Scarbourough* v. *Briggs*, 81 Cal.App.2d 161 [183 P.2d 683]; see *Beyerbach* v. *Juno Oil Co.*, 42 Cal.2d 11, 28 [265 P.2d 1]; Fletcher Cyc. Corps. (perm.ed.) § 5859; 50 C.J.S., Judgments, § 794.)

Here we have a judgment (the Nevada judgment) of dismissal with prejudice, rendered by the court on a motion therefor by plaintiff. ■ Whether such a judgment is a bar—res judicata—as to another action on the same cause in this state is controlled by Nevada law. (See Code Civ. Proc., § 1913; *Rall* v. *Lovell*, 105 Cal.App.2d 507 [233 P.2d 681]; *Smith* v. *Smith*, 115 Cal.App.2d 92 [251 P.2d 720];

*In re Kimler,* 37 Cal.2d 568 [233 P.2d 902]; Goodrich on Conflict of Laws, pp. 630-634; Rest., Conflicts, § 450.)
The rule is stated: ''(1) The effect of a valid judgment upon the rights or other interests of the parties and persons in privity with them is determined by the law of the state where the judgment was rendered.

'' (2) The effect of a valid judgment as a conclusive adjudication between the parties and persons in privity with them of facts which were or might have been put in issue in the proceedings is determined by the law of the state where the judgment was rendered.'' (Rest., Conflicts, § 450.)
Our courts take judicial notice of ''the laws of the several states of the United States and the interpretation thereof by the highest courts of appellate jurisdiction of such states.'' (Code Civ. Proc., § 1875.) In Nevada the statute with reference to dismissal, at the time the dismissal here was made, provided that an action may be dismissed by plaintiff at any time before trial if no affirmative relief is sought by defendant; by either party with the consent of the other; by the court when plaintiff fails to appear at the trial; by the court when upon trial plaintiff ''abandons'' it; on nonsuit; and in ''every other case judgment shall be rendered on the merits.'' (Nev. Compiled Laws (1929). § 8793, as amended in 1939, Nev. Stats. 1939, p. 33.)* It has been held by the Supreme Court of Nevada that where there is a dismissal of the action at plaintiff's behest but nothing is said about prejudice that the judgment is not on the merits and hence not a bar to a subsequent action by plaintiff on the same cause (*Van Vliet* v. *Olin,* 1 Nev. 495; *James* v. *Leport,* 19 Nev. 174 [8 P. 47]; *Christensen* v. *Duborg,* 38 Nev. 404 [150 P. 306]), but where it is dismissed on the stipulation of the parties it is on the merits and a bar. (*Phillpotts* v. *Blasdel,* 10 Nev. 19.) We find no Nevada statute or case law covering the case we have here where the plaintiff moved the court for judgment of dismissal with prejudice and the judgment of dismissal was with prejudice. Under those circumstances we will assume the Nevada law is not out of harmony with ours and thus we look to our law for a solution of the problem. (See *Strout* v. *Burgess,* 144 Me. 263 [68 A.2d 241, 12 A.L.R.2d 939]; *Knox* v. *Pryor,* 10 Cal.App.2d 76 [51 P.2d 106]; *McDonald* v. *Hartford Trust Co.,* 104 Conn. 169 [132 A. 902]; *Dimon* v. *Dimon,* concurring

---

*Compare Code of Civil Procedure, sections 581, 581b, 582, which are similar.

and dissenting opinions, 40 Cal.2d 516, 542 [254 P.2d 528].)

In *Lewis* v. *Johnson*, 12 Cal.2d 558, 563 [86 P.2d 99], we said: ''There is a well-recognized distinction between a dismissal voluntarily made by the clerk's entry, which is presumed to be without prejudice to the bringing of another action, and a dismissal entered in open court pursuant to stipulation, which is ordinarily effective as a *retraxit*. In the absence of such stipulation or motion addressed to the court, there is no *retraxit*.'' Here, according to the recital in the Nevada judgment, the dismissal with prejudice was made with prejudice on the motion of the inn's attorneys.

It would seem clear that a dismissal with prejudice by plaintiff of its action is a bar to a subsequent action on the same cause; otherwise there would be no meaning to the ''with prejudice'' feature. ''A dismissal with prejudice terminates the action and the rights of the parties are affected by it. It is a final judgment in favor of defendants and they are entitled to recover their costs. But a mere statement that a judgment of dismissal is 'with prejudice' is not conclusive. It is the nature of the action and the character of the judgment that determines whether it is res judicata. The intention of the court to make a determination on the merits may be important, but if the judgment is clearly not on the merits, the court's intention is immaterial.

''A dismissal without prejudice, on the other hand, is not a bar to another action by the plaintiff on the same cause. In other respects, however, it has the effect of a final judgment in favor of the defendant, for it terminates the action and concludes the rights of the parties in that particular action. . . .

''An order of dismissal containing no statement whatever that it is made without prejudice is not a bar to a subsequent action, unless the record shows that there was an actual determination on the merits.'' (16 Cal.Jur.2d, Dismissal, etc., § 5.) Finally, it is clear that any attack on the Nevada judgment raised by Burke as a defense in the instant action is collateral. (*Kaufman* v. *California Min. & Dredging Syndicate*, 16 Cal.2d 90 [104 P.2d 1038]; Rest., Judgments, § 11, com. a.) And, of course, a judgment of a court of a sister state having jurisdiction must be given full faith and credit. (U.S. Const., art. IV, § 1.)

Plaintiffs contend, however, that the Nevada court lacked jurisdiction, and its judgment is not a bar because Attorney

Morse had no authority to dismiss the inn's action with prejudice, Anderson had no authority to commence or prosecute the action for the inn, and the dismissal was the result of collusion and fraud by the mismanaging directors of the inn and Morse.

Aside from the question of the scope of the authority of an attorney with general power to represent a client in an action, to dismiss his client's action (here the dismissal by Morse of the inn's action), being raised by a direct attack on the judgment, there is the problem of whether such question can be raised on a collateral attack on the judgment. It has been stated both in this state and Nevada that a domestic judgment may not be impeached collaterally on the ground that a regularly licensed attorney appearing as such for a party to an action had no authority to act on his behalf. (See *Deegan* v. *Deegan,* 22 Nev. 185 [37 P. 360, 58 Am.St.Rep. 742] ; *Barber* v. *Barber,* 47 Nev. 377 [222 P. 284, 39 A.L.R. 706], dictum ; *Carpentier* v. *City of Oakland,* 30 Cal. 439 ; *Nielsen* v. *Emerson,* 119 Cal.App. 214 [6 P.2d 281] ; *Strand Imp. Co.* v. *Long Beach,* 173 Cal. 765 [161 P. 975], approving the Deegan and Carpentier cases; *Suydam* v. *Pitcher,* 4 Cal. 280 ; *Holmes* v. *Rogers,* 13 Cal. 191 ; *May* v. *Rosen,* 91 Cal.App.2d 794 [205 P.2d 1118].) In *Hill* v. *City Cab & Transfer Co.,* 79 Cal. 188 [21 P. 728], the same rule was stated but a collateral attack was permitted because it was admitted that the attorney had no authority. This is in line with the general rule that: ''On collateral attack every presumption is in favor of the validity of the judgment or order of a court of general jurisdiction, and any condition of facts consistent with its validity and not affirmatively contradicted by the judgment roll will be presumed to have existed. . . .

''Under this general rule it will be presumed, when necessary, that the parties consented to the court's action or waived objection thereto.'' (*Phelan* v. *Superior Court,* 35 Cal.2d 363, 373 [217 P.2d 951].) It is said in 88 A.L.R. 12, 36 : ''There is a lack of agreement among the courts on the question whether or not a judgment can be attacked in a collateral proceeding on the grounds that the defendant was not served with process and that the attorney entering his appearance had no authority to do so. The weight of authority supports the view that a domestic judgment, valid on its face, is not subject to collateral attack on this ground.'' (Citing cases from the federal courts and Arkansas, Indiana,

Iowa, Louisiana, Maine, Michigan, Missouri, Nevada, New Jersey, New York, Ohio, Pennsylvania, South Carolina, Texas and West Virginia; *contra*, Illinois, Kansas, Nebraska, Oregon and Virginia. [See also 5 Am.Jur., Judgments, § 83].)

■ On the other hand with respect to foreign judgments (judgments of a sister state) it has been said: ''Indeed, the clause of the Federal Constitution which requires full faith and credit to be given in each state to the records and judicial proceedings of every other state applies to the records and proceedings of courts only so far as they have jurisdiction, and the courts of one state are not required to give full faith and credit to, or regard as valid or conclusive, any judgment of a court of another state, which had no jurisdiction of the subject matter, or of the parties, or, in proceedings in rem, of the res. ■ Accordingly, the jurisdiction of a court rendering a judgment is open to inquiry under proper averments, when questioned in the court of another state. The party against whom the judgment is rendered is not forced to go to the state of the rendition of the judgment for relief. *These rules have been applied in the case of a foreign judgment entered upon an attorney's unauthorized appearance for a party.''* (Emphasis added; 31 Am.Jur., Judgments, § 549. See Rest., Judgments, § 12, com. c; *Carlton* v. *Miller*, 114 Cal.App. 272 [299 P. 738]; 50 C.J.S., Judgments, § 893e (6).)

The question of the res judicata effect of the Nevada judgment of dismissal was raised by Burke's motion to dismiss the instant action and that was the sole issue presented to the court. The court in its order of dismissal recited that the Nevada judgment was res judicata No other findings were made but the court in its remarks from the bench stated that as late as April, 1946, directors for Desert Inn had been elected including Lela Anderson; that a purported meeting of stockholders in Los Angeles in September, 1946, in which Anderson was removed, was a nullity as notice thereof was not given; that there is no showing that the action leading to the Nevada judgment of dismissal was not authorized by Desert Inn, inasmuch as Morse and Anderson were directors of it. Implicit in the dismissal of the California action, on the ground of res judicata of the judgment in the Nevada action, is the finding that Anderson had authority to commence the Nevada action for the inn and Morse had authority to act as its attorney and dismiss the Nevada action with

prejudice, and that there was no fraud or collusion in the commencement or dismissal of the Nevada action.

At the hearing on the res judicata question the transcript of the trial in the first Nevada action which resulted in a nonsuit was introduced as was a transcript of the record in the second Nevada action. Morse's deposition was also received. Therein he testified that he was a regularly licensed attorney practicing in Nevada; that he was one of the attorneys for the inn in the first Nevada action, being employed by Barkley and Anderson; that after the nonsuit was granted and in September, 1946, he wrote to Barkley stating he desired to withdraw as attorney in the first action and that he should obtain new counsel to file a new action; that after he wrote the letter any and all association with Barkley or plaintiff Gagnon was terminated; that he filed the second action at the request of Lela Anderson and her husband; that at the time of dismissal of that action he knew the California action was pending as did counsel for Burke. He filed an affidavit in the second action in reply to Burke's motion to dismiss for failure to bring it to trial, stating that there should not be a dismissal because the California action involving the same issues had been commenced and if it were not tried the second action should be dismissed. He stated that his dismissal of the second Nevada action was to have no relation ''whatsoever'' to the California action, no bearing on the issues in the California action, the one now before us.

Burke was called as a witness. It was stipulated he signed the verified answer in the second Nevada action in which it was alleged that Anderson had no authority to bring it for the inn but Burke said he did not know whether or not she had such authority. He testified that he and his counsel, Mr. Pearlsen, went to Morse's office in November, 1950, to have Morse dismiss the second Nevada action. He testified that he and his counsel knew the California action had been commenced; that they talked with Morse about settling the second Nevada action and paid him some money ($1,500 or $1,700) in settlement thereof and Morse had the action dismissed with prejudice as above mentioned. What Morse did with the money does not appear.

Mrs. Anderson testified that she signed the verification of the complaint in the second Nevada action in which she stated she was secretary of the inn, although she thought she was not at the time because of the purported stockholders' meeting which purported to remove her, but Morse told her

she was still secretary and she took his advice; that she protested that purported stockholders' meeting.

Plaintiff Gagnon testified concerning the stockholders' meeting in Los Angeles and that he was there elected president of the inn; that neither he nor any of the other stockholders of the inn ever authorized or knew about the commencement or dismissal of the second Nevada action and it was stipulated they did not know Morse filed that action.

■ Insofar as Anderson's authority is concerned, it would appear that the court was justified in concluding she was a director and secretary of the inn and the attempt to remove her was abortive. There may be a conflict in the evidence on this issue but there is sufficient to support the conclusion of the trial court. Hence she would not lack authority to commence the second Nevada action by reason of her holding no official position with the corporation.

■ As to Morse's authority to commence the second Nevada action there is a presumption that he had such authority. " 'The act of the attorney in entering the appearance of a defendant carries with it a presumption of due authority upon his part to do so.' " (*Voinich* v. *Rolleri*, 203 Cal. 379, 382 [264 P. 240], quoting from *Garrison* v. *McGowan*, 48 Cal. 592, 600; see also *Dale* v. *City Court of Merced*, 105 Cal.App.2d 602 [234 P.2d 110] ; *People* v. *Western Meat Co.*, 13 Cal.App. 539 [110 P. 338] ; *Estate of Pailhe*, 114 Cal.App.2d 658 [251 P.2d 76] ; *Wilson* v. *Barry*, 102 Cal.App.2d 778 [228 P.2d 331] ; *Sullivan* v *Dunne*, 198 Cal. 183 [244 P. 343] ; 6 Cal.Jur.2d, Attorneys at Law, §§ 154-155.) And that presumption may be weighed against evidence to the contrary by the trier of fact. (*Dale* v. *City Court of Merced, supra*, 105 Cal.App.2d 602.) The question should be decided by the trial court. (*Sullivan* v. *Dunne, supra*, 198 Cal. 183.)

■ With reference to an attorney's authority to dismiss his client's action with prejudice it is said: "An important problem is related to the distinction between voluntary dismissals or nonsuits which are without prejudice to the cause of action, and dismissals or nonsuits with prejudice, the last mentioned type being referred to in the cases by the common-law term 'retraxit.' It is clearly within the attorney's authority to dismiss the client's action without prejudice. However, a series of early cases held the general authority of an attorney even sufficient to empower him to effect a retraxit, amounting to a renunciation of the client's sub-

stantive right or cause of action. It is hardly possible to reconcile this rule with the established principle that the implied general authority of an attorney does not include any power or authority to dispose of the client's substantive rights, and it would therefore seem doubtful whether, or to what extent, the early cases would now be followed.'' (6 Cal. Jur.2d, Attorneys at Law, § 164.) And further in that connection: ''In civil litigation, the attorney, as the client's agent, and in the absence of fraud, has authority to bind his client in all matters pertaining to the regular conduct of a case. . . . In the absence of such special instructions, the conduct and management of the action is entrusted to the attorney's judgment; he decides what should be contested, what points should be taken, and what should be abandoned. This authority is, however, subject to the qualification that an attorney ordinarily does not have implied authority to do an act which will effect the surrender or loss of a client's substantial rights, for the client determines 'the objectives to be attended.' '' (6 Cal.Jur.2d, Attorneys at Law, § 156.)

 There is, however, a presumption that he has authority to compromise his client's action which he is prosecuting. (*Church* v. *Church*, 40 Cal.App.2d 701 [105 P.2d 643]; *Burns* v. *McCain*, 107 Cal.App. 291 [290 P. 623]; 66 A.L.R. 107, 126; 30 A.L.R.2d 944, 953; *State of Nevada* v. *California Min. Co.*, 15 Nev. 234; *Deegan* v. *Deegan*, 22 Nev. 185 [37 P. 360, 58 Am.St.Rep. 742].) Defendant Burke points out that there are authorities in California and Nevada which hold that on collateral attack the presumption of the attorney's authority is conclusive (*Westwood Temple* v. *Emanuel Center*, 98 Cal.App.2d 755 [221 P.2d 146]; *Parkside Realty Co.* v. *Mac-Donald*, 167 Cal. 342 [139 P. 805]; *May* v. *Rosen*, 91 Cal. App.2d 794 [205 P.2d 1118]; *Deegan* v. *Deegan, supra*, 22 Nev. 185 [37 P. 360, 58 Am.St.Rep. 742]), and it has been held that an attorney has authority to dismiss an action with prejudice (the modern name for retraxit, *Ghiringhelli* v. *Riboni*, 95 Cal.App.2d 503 [213 P.2d 17]; *Robinson* v. *Hiles*, 119 Cal.App.2d 666 [260 P.2d·194]) contrary to the rule at common law. (*Lamb* v. *Herndon*, 97 Cal.App. 193 [275 P. 503]; *Bogardus* v. *O'Dea*, 105 Cal.App. 189 [287 P. 149]; *Chase* v. *Van Camp Sea Food Co.*, 109 Cal.App. 38 [292 P. 179]; but see 6 Cal.Jur.2d, Attorneys at Law, § 164, *supra*.) While the above cited cases may appear to conflict with the rule that ordinarily an attorney has no authority to surrender his client's rights (see quotation *supra*, from 6 Cal.Jur.2d,

Attorneys at Law, §§ 156, 164), they may be reconciled on the theory that there is a rebuttable presumption that he had such authority.

It would seem, therefore, that the trial court was justified in concluding that Morse had authority to commence the second Nevada action and to dismiss it with prejudice.

While there may be evidence from which it could be inferred that Morse and Anderson and Burke's counsel and Burke acted collusively and fraudulently, the question was for the trial court. Plaintiffs rely in part on the allegations in their complaint in the instant action that Morse, Burke, Anderson and other directors acted collusively and fraudulently, but allegations are not proof. It would seem that Morse's testimony that he did not think the dismissal of the second Nevada action would affect the California action should not be allowed to alter the res judicata effect on collateral attack. In effect it was only his opinion of the legal effect of the dismissal.

Plaintiffs argue that Burke waived the defense of res judicata and is estopped to assert it, and in that connection, that they were prevented from giving evidence on that issue because the court confined the issue to res judicata. It is doubtful that there was any conduct on which a plea of estoppel or waiver could be based as there was no change in position on plaintiffs' part in reliance on Burke's claim in the second Nevada action that Anderson had no authority to act for the corporation. In any event the question would appear to be one for the trial court. Confining the issue to res judicata, as was done by the trial court, did not foreclose plaintiffs from making a showing that the defense had been waived or that Burke was estopped from raising it, as that would be part of the res judicata issue.

Plaintiffs claim that the case is an unusual one in which the doctrine of res judicata should not be applied (see *Greenfield* v. *Mather,* 32 Cal.2d 23 [194 P.2d 1] ; *Guardianship of Di Carlo,* 3 Cal.2d 225 [44 P.2d 562, 99 A.L.R. 990] ). This case does not present the factors present in those cases unless we hold that a dismissal with prejudice of an action by a corporation to recover for a wrong alleged to have been committed as to it cannot be res judicata where the dismissal occurs after stockholders have commenced a derivative action for the same wrong. No authority so holding has been cited and we find none.

Plaintiffs contend that the trial court was "motivated" in

making its order of dismissal by its finding that the prayer of the complaint was not sufficient. Even if we delve into the reasoning of the trial court it is clear it based its order on the premise of res judicata.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.